EXHIBIT

20

exhibitsticker.com

Transcript of the Testimony of

# Chief Scott Will

December 26, 2023

## Raymond Thompson v. Joshua Cockrell, et al

## Field Reporting Services

**314-461-2122**
**fieldreporting328@gmail.com**

**Page 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION
-----

RAYMOND THOMPSON,              )
                              )
        Plaintiff,             )
                              )
v.                            )Cause No.: 4:23-cv-133-SRW
                              )
JOSHUA COCKRELL, et al,       )
                              )
        Defendant.            )
                              -----


DEPOSITION OF CHIEF SCOTT WILL
TAKEN ON BEHALF OF THE PLAINTIFF
DECEMBER 26, 2023


SHEILA FIELD, CCR. No. 1226
--------------------------------------------------
--------------------------------------------------

Field Reporting Services
PO Box 252092
St. Louis, Missouri 63125
314-461-2122

**Page 2**

1                    I N D E X
2 QUESTIONS BY:                          PAGE
3 Mr. Gelfand                            5
4
5
6            E X H I B I T S
7 EXHIBIT          DESCRIPTION          PAGE:
8 No Exhibits were marked.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 3**

1          UNITED STATES DISTRICT COURT
2          EASTERN DISTRICT OF MISSOURI
3               EASTERN DIVISION
4                    -----
5 RAYMOND THOMPSON,          )
                            )
6        Plaintiff,          )
                            )
7 v.                        )Cause No.: 4:23-cv-133-SRW
                            )
8 JOSHUA COCKRELL, et al,   )
                            )
9        Defendant.          )
10                   -----
11
12
13     DEPOSITION OF CHIEF SCOTT WILL, produced,
14 sworn, and examined on behalf of the PLAINTIFF, on
15 DECEMBER 26, 2023, between the hours of ten o'clock
16 in the morning and twelve o'clock in the afternoon
17 of that day, via Zoom remote conferencing, before
18 Sheila Field, a Certified Court Reporter within and
19 for the State of Missouri, in a certain cause now
20 pending in the United States District Court Eastern
21 Division, Eastern District of Missouri, in the
22 above-entitled matter.
23
24                   -----
25

**Page 4**

1          A P P E A R A N C E S
2     The Plaintiff was represented by:
3 Margulis Gelfand, LLC
  7700 Bonhomme Avenue
4 Suite 750
  St. Louis, Missouri 63105
5 By:  Justin Gelfand
6     The Defendant was represented by:
7 Reichardt Noce & Young
  12444 Powerscourt Drive
8 Suite 160
  St. Louis, Missouri 63131
9 By:  Catherine Robertson
10
11
12
13                   -----
14     IT IS HEREBY STIPULATED AND AGREED by and
15 between counsel for the Plaintiff and counsel for
16 the Defendant that this deposition may be taken by
17 Sheila Field, CCR, a Certified Court Reporter, and
18 afterwards transcribed into typewriting; and the
19 signature of the witness is expressly waived by
20 agreement of counsel and consent of the witness.
21
22
23
24
25

---

**5**

```
 1            CHIEF SCOTT WILL,
 2  of lawful age, produced, sworn, and examined on
 3  behalf of the PLAINTIFF, deposes and says:
 4
 5            EXAMINATION
 6  QUESTIONS BY MR. GELFAND:
 7      Q.  Good morning.  Can you please state and
 8  spell your full name, for the benefit of the court
 9  reporter?
10      A.  Scott Will, W-I-L-L, Scott, S-C-O-T-T.
11      Q.  And you are the chief of police of the
12  Manchester Police Department, correct?
13      A.  Correct.
14      Q.  Chief Will, have you ever had your
15  deposition taken before?
16      A.  Yes.
17      Q.  Approximately how many times?
18      A.  A dozen, maybe.
19      Q.  Okay.  Has it always been in connection
20  with police work?
21      A.  No.
22      Q.  In what context have you had your
23  deposition taken, outside of your job?
24      A.  A civil proceeding, involving my wife.  A
25  lawsuit my wife filed against somebody.
```

---

**6**

```
 1      Q.  Okay.  Where was that?
 2      A.  It was taken in probably Clayton.  It was
 3  a number of years ago.
 4      Q.  Okay.  Given your experience testifying,
 5  I'm going to dispense with kind of the whole slew of
 6  normal ground rules, but just go over a couple of
 7  them.  If at any point I ask you a question or your
 8  attorney asks you a question, that you don't
 9  understand, I'm going to ask that you please tell us
10  and I promise you, you won't offend me, you won't
11  offend her.  We'll be happy to rephrase it.  Fair
12  enough?
13      A.  Okay.  Yep.
14      Q.  Similarly, if you answer any question I'm
15  going to assume that you understood it.  Fair
16  enough?
17      A.  Yep.
18      Q.  How long have you been the chief of the
19  police?
20      A.  It will be five years this February.
21      Q.  And as chief of police, what are your
22  duties and responsibilities?
23      A.  I'm in charge of the overall operation of
24  the police department, including making sure our
25  mission is followed.  I really cover all aspects of
```

---

**7**

```
 1  the police department.
 2      Q.  There's an old expression the buck stops
 3  here.  Does the buck stop with you?
 4      A.  Yes, sir.
 5      Q.  What is your academic background?
 6      A.  I have a masters degree in criminal
 7  justice and criminology.  I'm a graduate of the FBI
 8  National Academy.  I taught at university level
 9  classes, graduate levels.  I've done a lot of
10  training for law enforcement related issues too.
11      Q.  Where did you receive your undergraduate
12  degree?
13      A.  The University of Missouri St. Louis.
14      Q.  And when did you receive that from UMSL?
15      A.  Around '96 '97 '98, that area.
16      Q.  What was that in?
17      A.  I beg your pardon?
18      Q.  What were your undergraduate -- what was
19  your undergraduate degree in?
20      A.  Same thing.  Criminal justice and
21  criminology.
22      Q.  Where did you receive your masters degree?
23      A.  University of Lindenwood, Lindenwood
24  University.
25      Q.  And when did you receive the masters?
```

---

**8**

```
 1      A.  2000.
 2      Q.  You testified that you were trained at the
 3  FBI National Academy.  Did you ever serve in a
 4  federal law enforcement capacity?
 5      A.  Yeah.  I was a member of the joint
 6  terrorism task force, a Tier 2 level member of the
 7  task force.  And then of course, I've also -- I
 8  should -- I should have mentioned I'm also a
 9  graduate of the regular police academy.  That was
10  back in 1984.
11      Q.  Okay.  When were you a member of the JTTF?
12      A.  It was shortly after 9/11.  Let's see.
13  2002, maybe.
14      Q.  For approximately how long?
15      A.  Five years.
16      Q.  Were you member of the JTTF, in your
17  capacity as a state or local law enforcement
18  officer, as opposed to a federal agent?
19      A.  No.  I was a federal agent.
20      Q.  Have you ever served in a federal law
21  enforcement capacity, outside of a task force?
22      A.  No.  Not outside of a task force.
23      Q.  Okay.  Prior to becoming chief, were you
24  employed at the Manchester Police Department?
25      A.  No.  Prior to that, I was at Maryland
```

9

1 **Heights, where I served for 33 years.  I was a**
2 **captain there.**
3    Q.   For 33 years, at Maryland Heights?
4    **A.   Yes, sir.  Forty years altogether in law**
5 **enforcement, this April.**
6    Q.   What were your duties and
7 responsibilities, as a captain at Maryland Heights,
8 just generally?
9    **A.   Really, I -- I sort of ran the gamut.  I**
10 **was in charge of, briefly, of our tactical team.  I**
11 **was in charge of support services, of the bureau of**
12 **field operations.  The detective bureau, at one**
13 **point.  These are all over different points.**
14 **Support services, reserve officers, fleet**
15 **management.  I really -- I really -- I really went**
16 **through the whole gamut, in law enforcement, as a**
17 **captain over there.**
18    Q.   I want to shift gears, Chief, to the
19 Manchester Police Department and your role as chief.
20 Would you agree with me that when conducting any
21 sort of law enforcement activity, it's your
22 expectation that your officers will be thorough?
23    **A.   Yes.**
24    Q.   Fair?
25    **A.   Yes.**

10

1    Q.   Keep an open mind?
2    **A.   Yes.**
3    Q.   Follow all leads?
4    **A.   Follow all leads or refer them to someone**
5 **appropriate.**
6    Q.   In other words, either follow all leads
7 personally or have another law enforcement officer,
8 agent follow that lead?
9    **A.   Detective.  Yeah.  What have you.**
10    Q.   Okay.  Not rush to judgment, until they
11 have all relevant evidence?
12    **A.   Correct.**
13    Q.   Be honest and accurate, in reports and
14 affidavits?
15    **A.   Yes.**
16    Q.   As chief of the Manchester Police, would
17 you agree with me that officers, detectives, the
18 whole department, as a whole, has access to a myriad
19 of law enforcement tools?
20       MS. ROBERTSON:  Objection, calls for
21 speculation, vague.
22       THE WITNESS:  Do I answer?
23       MS. ROBERTSON:  Yeah, yeah.
24    **A.   Could you repeat that for me, sir?**
25    Q.   (BY MR. GELFAND)  Sure.  Would you agree

11

1 with me that the Manchester Police Department has
2 access to a myriad of law enforcement tools?
3    **A.   Yes.**
4    Q.   Okay.  And that includes the ability to
5 apply for, and if granted, execute search warrants,
6 correct?
7    **A.   Yes.**
8    Q.   To conduct witness interviews, correct?
9    **A.   Yes.**
10    Q.   To obtain documents or other pieces of
11 evidence, with judicially authorized subpoenas?
12    **A.   Yes.**
13    Q.   To use forensic crime laboratory use, as
14 appropriate?
15    **A.   Yes.**
16    Q.   Would you agree with me that it's only
17 fair to all parties involved, whether it's
18 defendants, alleged victims, the whole nine yards,
19 to use all available resources, to make sure that
20 you've investigated any situation fairly and
21 thoroughly?
22       MS. ROBERTSON:  Same objection.  You can
23 answer.
24    **A.   All resources?  Is that what you --**
25    Q.   (BY MR. GELFAND)  All available resources,

12

1 to make sure you've investigate -- investigated any
2 situation fairly and thoroughly?
3    **A.   Fairly and thoroughly.  All resources,**
4 **that's a little open-ended.  I mean, for example, we**
5 **wouldn't call major case squad out for, you know,**
6 **bicycle theft or -- you understand what I'm saying.**
7 **But they do have a lot of resources available to**
8 **them.**
9    Q.   Okay.  If you're investigating something,
10 just to use your example, like a bicycle theft,
11 would you agree with me, though, that you need to
12 use the resources available, to figure out -- to get
13 it right?
14       MS. ROBERTSON:  Same objection.
15    **A.   Yes.**
16    Q.   (BY MR. GELFAND)  Okay.  I want to direct
17 your attention to the night of October 22nd of 2022.
18 If you recall, were you personally on duty, that
19 evening?
20    **A.   I -- in the evening, no.  Most likely not,**
21 **I'm generally 9:00 to 5:00.**
22    Q.   Okay.  To the best of your knowledge, have
23 you ever personally spoken with or otherwise
24 communicated with a person named Amara Elmore?
25    **A.   Not to my knowledge.**

13

1     Q.   To the best of your knowledge, have you
2 ever spoken with or otherwise communicated with
3 Steven Mackenzie?
4     **A.   Not to my knowledge.**
5     Q.   Have you ever spoken or communicated with
6 my client, the plaintiff in this case,
7 Raymond Thompson?
8     **A.   Not to my knowledge.**
9     Q.   Are you familiar, at least broadly
10 speaking, with the case that brings us here
11 together?
12    **A.   Yes.**
13    Q.   What, if any, personal involvement did you
14 have, in connection with the Manchester Police
15 Department's activities, in this particular case?
16    **A.   My involvement in it really didn't take**
17 **place, until after this litigation was filed.**
18    Q.   And what was your involvement?
19    **A.   Discussing things with our attorneys.**
20    Q.   When you say your attorneys and I'm not
21 asking you anything that you discussed with your
22 attorneys, are you referring to Ms. Robertson and
23 any individuals in her firm?
24    **A.   Yes.**
25    Q.   In October of 2022, who was the city

14

1 attorney in Manchester?
2     **A.   Paul Rost.**
3     Q.   And who is Paul Rost?
4     **A.   Paul is our city attorney.  I'm not sure**
5 **-- I don't -- I don't know him, other than by sight.**
6     Q.   Okay.  Prior to October 22nd of 2022, had
7 Paul Rost served as the city attorney of Manchester,
8 Missouri, for quite some time?
9     **A.   He -- he was there, prior to that.  When**
10 **he started, I do not know.**
11    Q.   Are you familiar with Erin Seele,
12 S-E-E-L-E, at Mr. Rost's firm?
13    **A.   Yes.**
14    Q.   And who is Erin Seele?
15    **A.   She is one of the associates there.  And**
16 **she handles a variety of cases that Paul may refer**
17 **to her.**
18    Q.   Based on your experience, is it fair to
19 say that, put aside whether she's technically the
20 city attorney, in any sort of formal sense, but that
21 she has served as a city attorney in various
22 matters?
23    **A.   I -- I don't know if she serves any other**
24 **municipalities, but she has, from time to time, sat**
25 **for board meetings, in place of Paul.**

15

1     Q.   In other words, Paul Rost is the city
2 attorney and there have been instances, that you're
3 familiar with, where Erin Seele has served in his
4 place?
5     **A.   Yes.**
6     Q.   And was that true, prior to October 22nd
7 of 2022?
8     **A.   Yes.**
9     Q.   Now, switching gears, for a second, I want
10 to direct your attention to the night of October
11 22nd of 2022.  That evening, that night -- and when
12 I say October 22nd of 2022, I'm including after
13 midnight, so technically October 23rd of 2022 as
14 well.
15    **A.   Okay.**
16    Q.   Did Officer Gerhardt, Officer Cockrell, or
17 anyone else contact you, to advise you of the
18 situation that is the subject of this lawsuit?
19       MS. ROBERTSON:  You mean Gerholdt?
20       MR. GELFAND:  Gerholdt.
21    **A.   Gerholdt.  Yeah.  No.**
22    Q.   (BY MR. GELFAND)  Did anyone, in the
23 following couple of days, bring to your attention
24 the situation that is the subject of this lawsuit?
25    **A.   I don't believe so.**

16

1     Q.   On those days, October 22nd, 2022 and
2 October 23rd, 2022, did Manchester Police utilize
3 body worn cameras?
4     **A.   Yes.**
5     Q.   Did Manchester Police also utilize in car
6 cameras commonly called dash cameras?
7     **A.   Yes.**
8     Q.   Okay.  I'm going to refer to both of those
9 today as body cams and dash cams.  Are we on the
10 same page as to what we're talking about?
11    **A.   Yes.**
12    Q.   Okay.  Prior to October 22nd of 2022, did
13 the City of Manchester Police Department have a
14 general order in effect, governing the use of body
15 worn cameras and dash cameras?
16    **A.   Yes.**
17    Q.   And are you familiar with that particular
18 order?
19    **A.   Yes.**
20    Q.   Is that Order No. 466?
21    **A.   Correct.**
22    Q.   I can show you the document in a second,
23 but the effective date that I have, on that order
24 number, is March 25th of 2021.  Does that sound
25 right to you?

**17**

1  A. Yes.
2  Q. And it says the issuing authority is the
3  chief of police. Was that you, on March 25th of
4  2021?
5  A. Yes.
6  Q. So to cut to the chase, did you issue this
7  order?
8  A. I did.
9  Q. Okay. Based on your training and your
10  experience, as the chief of the Manchester Police,
11  what body cams were utilized, by Manchester police
12  officers, on October 22nd of 2022?
13  A. Generally speaking, all officers are given
14  -- assigned body cameras, at the beginning of their
15  shifts. And then they utilize the dash cameras that
16  are in the vehicle that they're assigned.
17    Now, whether a particular camera was down
18  in a car that night, I don't know. But in the
19  situation of a body cam, if it was down, there are
20  many others, that they can take in their place. So
21  generally speaking, when they walk out the door,
22  they should have a camera.
23  Q. And generally speaking, when should
24  officers use the camera, a body camera?
25  A. Generally speaking, any time they have

**18**

1  contact or interaction with a citizen or contact
2  with the public, beyond the, you know, the good
3  morning type of things, traffic stops, things like
4  that.
5  Q. And generally speaking, when is the dash
6  cam utilized by law enforcement, in their official
7  capacities?
8  A. Yeah. That is actually turned on
9  automatically, when they use their red lights. I
10  believe, they have to manually activate it, if it's
11  something other than that. If they just pull up to
12  a scene and they didn't happen to have their red
13  lights or siren on, for any reason, I believe those
14  have to be manually activated.
15  Q. What is your expectation, as the chief of
16  police, as to why officers should utilize body cams,
17  when they're interacting with members of the public?
18    MS. ROBERTSON: Objection. Object to the
19  form, vague, calls for speculation. You can go
20  ahead and answer, Chief.
21  A. Body cameras, they've been around for --
22  not body cameras, but cameras, in general, have been
23  around for some time. And as technology has
24  improved and we've had the ability to -- to have our
25  interactions captured on video, it's a way of

**19**

1  capturing that moment, for -- for future use,
2  whether it be administratively or criminal --
3  criminal cases, in which you need evidence. And --
4  and it -- it -- it's there, for -- for transparency
5  purposes.
6  Q. And to put that into more common English,
7  it's there to memorialize what actually happens,
8  between law enforcement and members of the public,
9  correct?
10    MS. ROBERTSON: Same objection, you can
11  answer.
12  A. Yes. Yes.
13  Q. (BY MR. GELFAND) Would you agree with me,
14  given your almost 40 years of law enforcement
15  experience, that a video memorializes what
16  transpires better than an officer's memory and
17  narrative in a police report?
18    MS. ROBERTSON: Same objection.
19  A. No. I don't agree with that. I have
20  often found that a camera doesn't show the context
21  of what's happening, all the time. Things may be
22  happening off camera angles, visions, things of that
23  nature.
24    There's times when an officer's
25  observations or a witness's observations actually

**20**

1  turn out to be better than something that you can
2  see in a camera. Chasing somebody down the road
3  with a handgun in their -- in their possession or
4  hand, that the officer may be able to see, but it's
5  difficult to capture on a video is just an example
6  of that.
7  Q. Are there instances where officers are
8  inaccurate, in their police reports?
9    MS. ROBERTSON: Same objection.
10  A. Yes. It has happened. Sure.
11  Q. (BY MR. GELFAND) Now, I want to direct
12  your attention to what I'm going to show you, which
13  is Exhibit 3. Bear with me, for one sec, while I
14  share my screen. Can you tell me if you can see
15  what I've marked as Exhibit 3, in front of you?
16  A. Yes.
17  Q. Does Exhibit 3 appear to be a photograph
18  of Officer Gerholdt?
19  A. I can't see his face, but I have no reason
20  to believe it's not him. And it has his name.
21  Q. I'm sorry?
22  A. It has his name displayed.
23  Q. And it has his DSN number, correct?
24  A. Correct.
25  Q. Okay. Do you know Officer Gerholdt?

Chief Scott Will  -  December 26, 2023

21

1    **A.  I do.**
2    Q.  How do you know Officer Gerholdt?
3    **A.  I hired him.**
4    Q.  Is it your understanding, based on
5  reviewing documents in this particular case, that
6  Officer Gerholdt responded to Mr. Thompson's house,
7  on October 22nd of 2022?
8    **A.  Yes.**
9    Q.  If we look at this photo, in Exhibit 3, do
10  you see a body cam?
11    **A.  I do.**
12    Q.  And is that the body cam make and model,
13  so to speak, that was utilized on that date?
14    **A.  Yes.**
15    Q.  The body cam appears to have a green light
16  and a red light.  Would you agree with me on that?
17    **A.  Yes.**
18    Q.  What, if anything, does the green light
19  indicate to you?
20    **A.  That the camera is functioning.**
21    Q.  What, if anything, does the red light
22  indicate to you?
23    **A.  It has been some time since I've seen**
24  **these, but it's my understanding that means --**
25  **indicates that it's recording.**

22

1    Q.  Would you agree with me that Exhibit 3
2  reflects a green light, that is visible, and a red
3  light, that is visible?
4    MS. ROBERTSON:  Object to form, calls for
5  speculation, vague foundation.  You can answer, if
6  you know.
7    **A.  Yes.  I would agree.**
8    Q.  (BY MR. GELFAND)  Okay.  Are you guessing
9  or do you know the color green and the color red?
10    **A.  No.  That looks right to me.  I know that**
11  **the green indicates that it's -- actually, I may**
12  **have that backwards.  But with both of them on, it**
13  **indicates to me that it is recording.**
14    Q.  Now, if we direct your attention -- well,
15  let's back up.
16    I will represent to you and your attorney
17  can correct me, if she believes I'm misrepresenting
18  this.  But Officer Gerholdt testified, in his
19  deposition, that he was utilizing his body cam, that
20  evening.  Do you have any reason to disbelieve that?
21    **A.  No.**
22    Q.  I will also represent to you that Officer
23  -- well, first of all, do you know who
24  Officer Cockrell is?
25    **A.  I do.**

23

1    Q.  Who is Officer Cockrell?
2    **A.  He's one of our police officers.**
3    Q.  And based on your preparation, for this
4  deposition, is it your understanding that
5  Officer Cockrell also responded to Mr. Thompson's
6  house that evening, October 22nd of 2022?
7    **A.  Yes.**
8    Q.  I will represent to you that
9  Officer Cockrell testified, in his deposition, that
10  he was not utilizing his body camera that evening.
11  Based on your understanding of Manchester Police's
12  policies and procedures, should he have been
13  utilizing his body camera that evening?
14    MS. ROBERTSON:  Object to form, vague,
15  calls for speculation.
16    **A.  Again, generally speaking, the answer is**
17  **yes, without knowing the specific circumstances.**
18  **But generally, yes, it should have been on.**
19    Q.  (BY MR. GELFAND)  What is your
20  understanding of how body camera footage is actually
21  captured?  In other words, if Officer Gerholdt
22  accurately testified that he recorded body camera
23  footage from the Thompson residence that evening,
24  how did that get transferred to Manchester Police
25  Department's servers?

24

1    **A.  It's my understanding one of two ways.**
2  **They -- when they put the body camera into the**
3  **docking port of their vehicle, I believe it's**
4  **transferred into the in-car system.  But either way,**
5  **when they come onto the station lot, that system**
6  **automatically uploads it into our software here.  So**
7  **it's done automatically, when they pull into the**
8  **lot.**
9    Q.  And how does dash cam footage similarly
10  get uploaded onto Manchester Police Department
11  servers?
12    **A.  The same thing.**
13    Q.  So is it fair to say these are automatic
14  processes, that necessarily happen, when an officer
15  returns to the station, so to speak?
16    **A.  Yes.**
17    Q.  Now, I want to direct your attention to
18  Exhibit 6.  Can you see Exhibit 6, in front of you,
19  sir?
20    **A.  I do.**
21    Q.  Do you recognize Exhibit 6?
22    **A.  Yes.**
23    Q.  What is Exhibit 6?
24    **A.  It's our policy on body worn cameras.**
25    Q.  This specifically references Order No.

25

1  466, effective 3/25/2021, issued by the chief of the
2  police; is that correct?
3      A.  Correct.
4      Q.  The end of this exhibit, if we go to the
5  last page, Page 9, indicates that it is signed by
6  Colonel Scott Will, Chief of Police.  Is that your
7  signature?
8      A.  It is.
9      Q.  And this is a nine-page order, correct?
10     A.  Correct.
11     Q.  The distribution says all department
12  personnel?
13     A.  Correct.
14     Q.  Would that have included Officer Cockrell
15  and Officer Gerholdt?
16     A.  Yes.
17     Q.  Now, if we direct your attention to the
18  top of Exhibit 6, it says the purpose of this
19  general order is to establish policy and procedure,
20  for the use of portable audio, slash, video
21  recording devices, specifically body worn cameras,
22  by members of this department; is that correct?
23     A.  Correct.
24     Q.  And it also says that this order will also
25  provide guidelines for the use, management, storage,

26

1  and retrieval of audio, visual media recorded by
2  body worn cameras, correct?
3      A.  Correct.
4      Q.  Based on your training and experience,
5  with the body cams that were utilized by your police
6  department on October 22nd of 2022, did they capture
7  both video and audio?
8      A.  When you say they, are you talking about
9  Gerholdt's camera?
10     Q.  The cameras that were utilized, by the
11  department, on that date.
12     A.  Did they capture -- I'm not sure I
13  understand.
14     Q.  Sure.  I'm not talking about specific
15  video footage.  I'm just saying, as a general
16  matter, did the body cams, that were utilized, by
17  your department on the date of this incident, which
18  is October 22nd of 2022, generally capture the video
19  and the audio, if they were operated -- if they were
20  on and operated properly?
21     A.  I would expect that they would.  Yes.
22     Q.  In other words, they have the capacity to
23  capture not only visual, but audio as well, correct?
24     A.  Correct.
25     Q.  Is that the case with dash cam videos?

27

1      A.  Yes.  To an extent.  The audio isn't
2  always recorded.  The range of the -- the audio
3  actually comes from the body camera to -- to the
4  car.  It's my understanding it's not as -- as clear
5  as -- as the body camera itself.  But to answer your
6  question, generally, yes.
7      Q.  So is it fair to say that the body cam
8  does a better job of capturing audio, but the dash
9  cam does capture audio?
10     MS. ROBERTSON:  Object to form, vague,
11  calls for speculation.
12     Q.  (BY MR. GELFAND)  I mean, is that what
13  you're saying?
14     A.  Yes.
15     Q.  Okay.  If I direct your attention back to
16  Exhibit 6, the general order that you implemented.
17  Was this general order effective, on October 22nd
18  and October 23rd of 2022?
19     A.  Yes.
20     Q.  Digital evidence is defined as files
21  including photographs, audio recordings, and video
22  footage captured by a body cam and stored digitally,
23  correct?
24     A.  Correct.
25     Q.  And that would also apply to dash cams,

28

1  correct?
2      A.  Correct.
3      Q.  Based on your almost 40 years of law
4  enforcement experience, why is it important for law
5  enforcement to preserve evidence?
6      MS. ROBERTSON:  Object to form, vague,
7  calls for speculation.
8      A.  Evidence is the tools in a case that are
9  used to generally prove or disprove a particular
10  fact.  So we keep evidence when it is warranted.
11     Q.  (BY MR. GELFAND)  Would you agree with me
12  that video footage of a member of the public
13  accessing someone else's private property
14  constitutes evidence?
15     MS. ROBERTSON:  Object to form, vague,
16  calls for speculation.
17     A.  And actually, I would agree with that.  It
18  does -- it does require speculation.  You know, the
19  form of your question is does the camera, is it
20  necessary to capture their being on a property?  Is
21  that what you're asking me?  I'm sorry.  Maybe just
22  repeat the question.
23     Q.  (BY MR. GELFAND)  Sure.  If you have video
24  of somebody entering someone else's private
25  property, is that evidence?

---

29

1    MS. ROBERTSON:  Same objection.
2    A.   No.  We are on private property, quite a
3  bit.  And that doesn't make it evidence at all.
4  We're there, just called to a scene.  We walk up to
5  the front door and knock on the door.  That doesn't
6  make it evidence.  We check a house where they, you
7  know, they're on vacation check.  My point is that
8  there's many times that we're on someone's private
9  property, that does not warrant or make that
10  evidence.
11    Q.   How about if somebody takes a motor
12  vehicle that doesn't belong to them?  Is that
13  evidence?
14    MS. ROBERTSON:  Same objection, vague,
15  calls for speculation.
16    A.   An example that you're giving, that
17  someone is taking a motorcycle -- and again, it
18  depends on the circumstances.  If someone is
19  believing they're retrieving an item, that belongs
20  to somebody else, I wouldn't call that necessarily
21  evidence.  If it's being taken, in connection with
22  the criminal report, it would be.  Does that make
23  sense?
24    Q.   (BY MR. GELFAND)  Well, we'll get into
25  this, in a second.  What is your understanding, as

---

30

1  to why Manchester Police responded to Mr. Thompson's
2  house, on October 22nd of 2022?
3    A.   It originally -- the original call -- I'm
4  looking for it here -- was classified as a -- just
5  bear with me for one second.
6    Q.   Are you looking for the police report?
7    A.   No.
8    Q.   What are you looking for?
9    A.   I'm looking for this.  This is a -- it's
10  keep the peace.  So when dispatch sends an officer,
11  they put a category into the system.  And this was
12  categorized as keep the peace.  And that was --
13    Q.   Who was --
14    A.   Sorry?
15    Q.   I'm sorry.  I didn't mean to interrupt
16  you.
17    A.   Okay.  It -- it's categorized as keep the
18  peace.  And so that is what will also show up on the
19  officer's screen, when they're routed there.
20    Q.   Who was threatening the peace?
21    MS. ROBERTSON:  Objection, calls for
22  speculation.
23    A.   Yeah.  I -- I mean, I'm going off of what
24  the notes say here.  Actually, this copy that I have
25  is not very good.  I -- I would have to research

---

31

1  this, sir, to accurately give you an answer as to
2  what the dispatchers provided the officers.  So I --
3  I -- at this very moment, I can't say who -- I -- I
4  can't say why the dispatchers entered this.  I have
5  not -- I have not listened to the audio recording of
6  the actual phone call to -- to dispatch, so...
7    Q.   (BY MR. GELFAND)  Let's -- let's back up.
8    A.   Okay.
9    Q.   Do you see Exhibit 4 on the screen in
10  front of you?
11    A.   Let's see if I -- do I see R?
12    Q.   I'm sharing my screen with you.
13    A.   Yeah.  I'm not -- try it again.  Okay.
14  Okay.  Yes.  That's the report.
15    Q.   Okay.  Do you see Exhibit 4 on the screen
16  in front of you?
17    A.   Uh-huh.
18    Q.   Yes?
19    A.   Yes.  That's the report.
20    Q.   Chief Will, do you recognize Exhibit 4?
21    A.   Yes.
22    Q.   What is Exhibit 4?
23    A.   It's the police report.
24    Q.   When you say the police report, are you
25  referring to the investigative, slash, offense

---

32

1  report of Manchester Police Department, regarding
2  the incident at Mr. Thompson's house?
3    A.   Correct.
4    Q.   The type of incident says stealing of a
5  motor vehicle.
6    A.   Correct.
7    Q.   In your training and experience, as the
8  chief of the Manchester Police Department, what does
9  that reference?
10    A.   An auto theft.
11    Q.   And based on your understanding of this
12  case, what automobile was stolen?
13    A.   A motorcycle.
14    Q.   And in particular, have you come to learn
15  that the automobile, that was stolen, was a
16  motorcycle stolen from Mr. Thompson's house, that
17  belonged to Mr. Thompson?
18    A.   Yes.  Yes.  We have since learned that.
19  Yes.
20    Q.   What is supposed to be in the officer's
21  section of the police department -- of the police
22  report?
23    MS. ROBERTSON:  Object to form, vague,
24  calls for speculation.
25    A.   Generally, it's the officers who are

---

33

1  involved in the case.
2      Q.  (BY MR. GELFAND)  Would that include the
3  two officers who responded to the house?
4      A.  Yes.
5      Q.  Do you have any knowledge as to why
6  Officer Cockrell's name is completely missing?
7      A.  No.
8      Q.  Would you agree with me that that's an
9  inaccuracy in the police report?
10         MS. ROBERTSON:  Objection.
11      A.  It should have been listed, if he -- if he
12  showed up is my answer.
13      Q.  (BY MR. GELFAND)  And so to answer my
14  question, if it's not listed, which it's obviously
15  not, would you agree with me that the police report,
16  at least in that capacity, is inaccurate?
17      A.  Yes.
18      Q.  Is it your understanding, as you sit here
19  today, on December 26th of 2023, that Amara Elmore
20  and Steven Mackenzie unlawfully took Mr. Thompson's
21  Harley Davidson motorcycle, from his residence that
22  night?
23         MS. ROBERTSON:  Object to form, vague,
24  foundation, calls for speculation.
25      A.  Yes.

34

1      Q.  (BY MR. GELFAND)  Would you agree with me,
2  with your almost 40 years of law enforcement
3  experience and as the chief of police, that video
4  footage of that theft occurring would constitute
5  evidence, that should be preserved?
6         MS. ROBERTSON:  Object to form, vague,
7  calls for speculation.
8      A.  Yes.
9      Q.  (BY MR. GELFAND)  Prior to testifying
10  today, what, if any, effort did you take, to
11  determine whether Officer Gerholdt's body camera
12  footage was, in fact, preserved, meaning footage of
13  this incident on October 22nd 2022 and October 23rd
14  2022?
15      A.  I looked into the matter, along with the
16  -- with the commander who is in charge of that
17  aspect of operations here.
18      Q.  Was Officer Gerholdt's body camera footage
19  of this incident preserved by the Manchester Police
20  Department?
21      A.  It was preserved, in terms of the system
22  and the -- I'm sorry?
23      Q.  No.  I was just coughing.  I apologize.
24      A.  It was -- it was preserved in --
25  consistent with the type of call that it was

35

1  dispatched, which it was keep the peace.  And within
2  the guidelines that that particular call would --
3  would require for us to hold.
4      Q.  Which means what, in English?
5         MS. ROBERTSON:  Objection, argumentative.
6      A.  The call came out as a keep the peace,
7  which is not generally -- which is not a crime, per
8  se.  So the system would generally keep this for a
9  shorter period of time than a theft report, for
10  example.  The dispatcher puts in what she believes
11  the call is going to be and gives that information
12  to the officer on the screen, with -- with some of
13  the notes there, that are included.  Then the
14  officer, he doesn't need to write a report.
15         Then based on the evidence and information
16  that he obtains, he may change that classification,
17  which was done here.  He changed it to a
18  classification of the stealing of a motor vehicle.
19      Q.  (BY MR. GELFAND)  So let's back up, for a
20  second.  Based on the research, that you conducted,
21  did Officer Gerholdt's body camera record footage
22  from the incident at Mr. Thompson's house involving
23  his Harley Davidson?
24      A.  I can't answer that, given the fact that
25  the -- there's no recording to be found.  We could

36

1  not find the recording.  The photograph that you
2  showed me, I'm assuming that is from the night, it
3  was taken -- I don't know who took that picture, but
4  I'm assuming it was from the night indicates to me
5  that his camera was functioning.
6         And so the question was why don't we have
7  that recording anymore.  But I -- I can answer that
8  I would have expected to see that on the system.
9  But I -- I could not find it.  So I can't say, for
10  sure, it was recording.
11      Q.  Did you look, to determine whether any
12  dash cam footage, from the vehicles driven by
13  Officer Gerholdt or Officer Cockrell that evening,
14  captured any recordings?
15      A.  We looked for all recordings.  Yes.
16      Q.  Okay.  So let's just get a couple of facts
17  in order, before we get deeper.
18      A.  Okay.
19      Q.  Is it your testimony today that no
20  recordings, including body cam and dash cam
21  recordings from the incident involving
22  Mr. Thompson's motorcycle, are currently in the
23  custody, possession, or control of the Manchester
24  Police Department?
25      A.  That's -- that is my belief.  Yes.

Chief Scott Will  -  December 26, 2023

37

1    Q.  And to be clear, in simple English, is it
2  fair to say you looked for those recordings, in
3  connection with this litigation, and didn't find
4  them?
5    A.  Correct.
6    Q.  When was the body cam footage destroyed or
7  otherwise purged from the system by the Manchester
8  Police Department?
9    **A.  Well, the system is designed to purge**
10 **calls after I believe it's 30 days.  I'm not certain**
11 **about that time.  But after 30 days, unless the**
12 **officer goes back and changes it.**
13      **And here again, as I described before,**
14 **sometimes the dispatch will put it in one way and**
15 **then the officer will discover that it is something**
16 **else.  So the officer can go in and change that**
17 **category, which would have meant that the recording**
18 **would stay much longer.**
19      **In the case of an auto theft, it should be**
20 **in there -- it's usually consistent with the statute**
21 **of limitations.  So in this case, it would have been**
22 **three years.**
23    Q.  So let's back up, for a second.  If we
24 look at Exhibit 4, would you agree with me that as
25 of at least October 23rd, 2022 at 4:03 a.m. central

38

1  time, the Manchester Police Department considered
2  this incident stealing of a motor vehicle?
3    **A.  Yes.**
4    Q.  And if we look lower on the page, under
5  offenses, it references a felony statute next to the
6  phrase, Missouri Circuit Court, correct?
7    **A.  Correct.**
8    Q.  And F-E-L period refers to felony,
9  correct?
10   **A.  Correct.**
11   Q.  Would you agree with me that if, in fact,
12 a felony was committed on October 22nd or October
13 23rd of 2022, the statute of limitations, under
14 Missouri State Law, has not yet expired for that
15 felony?
16     MS. ROBERTSON:  Object to form, calls for
17 legal conclusion.
18   **A.  Correct.**
19   Q.  (BY MR. GELFAND)  And to be clear, as the
20 chief of police, you're familiar with the particular
21 statute involving stealing of a motor vehicle,
22 correct?
23   **A.  I am.**
24     THE WITNESS:  Counselor, I'm just going to
25 step over here and grab a bottle of water.

39

1      MR. GELFAND:  Sure.  And Chief Will, if
2  you need a break, at any point, there's certainly no
3  prohibitions on that.  So just let me know.
4      THE WITNESS:  Okay.  Thank you.
5      MR. GELFAND:  Are you okay to continue?
6      THE WITNESS:  Yeah.  Yeah.  I can
7  continue.
8    Q.  (BY MR. GELFAND)  I want to direct your
9  attention back to Exhibit 6, please, which I will
10 show you on the screen.  Do you see Exhibit 6, in
11 front of you?
12   **A.  I do.**
13   Q.  To be clear, this is the policy that you
14 implemented the year prior to this incident,
15 correct?
16   **A.  Correct.**
17   Q.  There is a section titled retention,
18 slash, release of digital evidence and
19 non-evidentiary video.  Do you see that?
20   **A.  Yes.**
21   Q.  Subsection A said recordings related to,
22 dot, dot, dot, felony criminal proceedings,
23 litigation, or a personnel complaint shall be
24 preserved until the matter is resolved and/or in
25 accordance with the law, City of Manchester attorney

40

1  and department evidence retention policy.  Did I
2  read that correctly?
3    **A.  Yeah.**
4    Q.  Would you agree with me that to the extent
5  they existed, recordings from this incident, that is
6  the subject matter of this civil litigation, that
7  you're testifying as a fact witness in, should have
8  been preserved including until today?
9    **A.  Yes.**
10   Q.  All right.  And if we look at Subsection
11 C, it says all video recorded events uploaded from
12 body worn cameras will be retained, for a minimum of
13 30 days, per Missouri secretary of state records
14 retention schedule or requirements, correct?
15   **A.  Correct.**
16   Q.  So is it fair to say there is, at a
17 minimum, a 30-day retention policy for all videos?
18   **A.  Fair to say.**
19   Q.  And that includes body camera videos and
20 dash camera videos, correct?
21   **A.  Correct.**
22   Q.  Are you familiar with an email address,
23 which I will spell out, for the benefit of the court
24 reporter, police@manchestermo.gov?
25   **A.  Yes.**

Chief Scott Will  -  December 26, 2023

---

41

1   Q.  What is that email address?
2   A.  That is a general email address that is on
3  our website, that we actually no longer use.
4   Q.  When you say that we no longer use,
5  meaning that the Manchester Police Department
6  previously used, but no longer uses?
7   A.  Well, we found that that website you
8  referenced was jammed, to -- to a -- with a
9  significant amount of junk mail and advertisements,
10  where it became a laborious process to go through
11  all the emails, to determine what few emails, that
12  were sent to us, were actually legitimate.  So we've
13  changed it to a form based process.
14      And the officers, when they're out, always
15  tell clients -- I mean, citizens that if they need
16  to reach them, they give them a personal email
17  address.  Any officer can be reached via email by
18  their initials and their last name.
19      So that -- that generalized
20  police@manchestermo.gov is -- was very problematic.
21  And the other -- I mean, we generally get documents,
22  subpoenas sitting on my desk that are mailed to us,
23  as snail mail, UPS -- United States Postal Service.
24   Q.  When did Manchester Police stop using that
25  email address?

---

42

1   A.  I don't know, for sure.  That is -- that
2  is a City function.  It's not exclusive to the
3  police department.  I just -- I just know, at some
4  point, they quit using it.  Actually, let me
5  rephrase that.
6      They may -- they may -- that address may
7  take someone to a form, that someone has to fill out
8  now, as opposed to just a regular email address,
9  that you and I would have.
10   Q.  I'm going to show you what I've marked,
11  for purposes of this depo, as Exhibit 7, which I
12  will represent to you, as you can see, it's just a
13  screenshot, from the Manchester website.  Are you
14  familiar with the Manchester website?
15   A.  Yes.
16   Q.  So under police administration and support
17  operations, as of at least December 4th of 2023,
18  there's a link to email the police department.  Do
19  you see that?
20   A.  Yes.
21   Q.  And there's a phone number above that.  Do
22  you recognize that phone number?
23   A.  It's a little blurry, but yeah.  I think
24  that's our station number.
25   Q.  Do you recognize Exhibit 7 as a screenshot

---

43

1  of the manchestermo.gov website?
2   A.  Yes.
3   Q.  Now, the link -- I'm going to show you
4  Exhibit 8.  It's a little tough to see.  So I'm
5  going to do my best to zoom in for you.  Do you see
6  that same link, email the police department?
7   A.  Do I see --
8   Q.  Let's back up.  Do you see Exhibit 8 in
9  front of you?
10   A.  Yes.
11   Q.  Okay.  And the left side of Exhibit 8 is
12  what I just showed you, which is Exhibit 7, correct?
13   A.  Yes.  It appears to be.  Yeah.
14   Q.  The right side includes what you could
15  call the meta-data, where it says mail to, colon,
16  police@manchestermo.gov, email the police
17  department.  Did I just read that correctly?
18   A.  I take your word for it.  I'm having a
19  little trouble seeing it, but I take your word for
20  it.
21   Q.  Do you see where I'm looking?  Let me zoom
22  in for you.
23   A.  Okay.  Mail to police -- yeah.  There you
24  go.
25   Q.  So even today or at least as of the date

---

44

1  of Exhibit 7 and 8, if I hit -- if I click on email
2  the police department, it goes to
3  police@manchestermo.gov, correct?
4   A.  No.  First of all, I'm not familiar with
5  what you're showing me here.  I have really no idea
6  what that is.  I have checked it myself, to see what
7  happens, when you click that button.  And it did
8  take to a form based screen, where someone has to
9  fill out a form, thereby eliminating all the junk
10  mail that was going into that.
11   Q.  So what email address does that form get
12  sent to, if someone fills out that form?
13   A.  I -- I don't know.  I'd have to -- I don't
14  know.
15   Q.  On October 22nd of 2022, was the email
16  address police@manchestermo.gov in use?
17   A.  I believe so.  Yes.
18   Q.  And was that also the case, on November
19  14th of 2022?
20   A.  I would -- I would believe so.  I think
21  that change was fairly recent.
22   Q.  In other words, after November 14th of
23  2022?
24   A.  Yep.
25   Q.  I'm going to show you what I've marked as

---

Chief Scott Will  -  December 26, 2023

---

45

1  Exhibit 5.  Can you tell me if you can see that in
2  front of you?
3      **A.  Yep.**
4      Q.  Exhibit 5, I will represent to you is a
5  preservation of records letter that I sent on
6  November 14th of 2022 to police@manchestermo.gov, as
7  well as by email to Paul Rost and Erin Seele, who
8  you previously identified as the city attorneys or
9  Ms. Seele as substituting for Mr. Rost, as the city
10  attorney, correct?
11      **A.  Correct.**
12      Q.  Have you ever seen Exhibit 5, prior to
13  testifying today?
14      **A.  Yes.**
15      Q.  When is the first time you saw Exhibit 5?
16      **A.  I am not sure of the exact date.  Before**
17  **this deposition.  And I'm having trouble getting to**
18  **it right now.  I reviewed my schedule, for that time**
19  **period.  And it -- it brought up a vacation, where I**
20  **was on vacation, for a couple weeks.  I can't get it**
21  **to come up now, for some reason.  The answer to your**
22  **question is I don't know when specifically I read**
23  **that.  I do know eventually it was given to me and I**
24  **think -- I believe Mr. Rost had a copy of it also,**
25  **he sent over.  But I -- I'm afraid I'm going to lose**

---

46

1  **you, if I -- if I minimize it or exit full screen.**
2  **Oh here we go.  Here we go.  Okay.**
3      Q.  Let me ask it this way.  Do you have any
4  disagreement, at all, that the Manchester Police
5  Department and the city attorney, Mr. Rost, received
6  this preservation request, on November 14th of 2022?
7      **A.  I don't have any reason to think that's**
8  **not true.**
9      Q.  If we look at Exhibit 5, can you see at
10  the top, where it says this law firm represents
11  Raymond Thompson, just below preservation of
12  records?
13      **A.  Yes.**
14      Q.  Would you agree with me that, this letter
15  identifies Mr. Thompson by name, as well as the date
16  that we contend Manchester Police Department
17  illegally entered Mr. Thompson's property and
18  facilitated the theft of his Harley Davidson?
19      **A.  Yes.**
20      Q.  In other words, would you agree with me
21  that if somebody acted on this preservation letter,
22  the Manchester Police Department had all of the
23  information it needed to properly identify the
24  incident and any videos and recordings that existed?
25      **A.  Yes.**

---

47

1      Q.  The letter goes on to spell out that
2  there's anticipation of possible litigation, between
3  Mr. Thompson and the Manchester Police Department,
4  correct?
5      **A.  Yes.**
6      Q.  And there's a demand that the police
7  department preserve, among other things,
8  electronically stored information, correct?
9      **A.  Yes.**
10      Q.  And to be clear, there's no ambiguity
11  here, that expressly references body cam footage,
12  dash cam footage, and various other documents, that
13  may or may not exist, correct?
14      **A.  Correct.**
15      Q.  The letter included my name and contact
16  info, correct?
17      **A.  I -- you'd have to go back down.  I'm --**
18  **I'm assuming that your name is on here.  Yeah.  Yep.**
19      Q.  And it said, as is custom, if there's any
20  questions or concerns or if you want to discuss
21  this, call me, correct?
22      **A.  Yes.**
23      Q.  Or contact me, through your legal counsel,
24  if any.
25      **A.  Okay.**

---

48

1      Q.  So my question for you is this.  Why did
2  Manchester Police not preserve the body cam and dash
3  cam footage, from the incident that is the subject
4  of this litigation?
5      **A.  When I received this letter, whatever date**
6  **that it was, I did open the report, I looked at the**
7  **report.  I noticed there were some documents entered**
8  **into the report, that were saved, the officer saved,**
9  **for perpetuity, until we were to expunge the record**
10  **and that doesn't happen for many, many years.**
11      **I saw that it was captioned as a stealing**
12  **of an auto or a vehicle report.  I knew that is**
13  **a three-year statute of limitations.  So I did not**
14  **take the extra -- I did not get into the video**
15  **system, to look at the video, because it was my**
16  **belief that the system would have -- would have**
17  **retained it for three years and therefore be**
18  **available to you.**
19      Q.  So in other words, do you readily agree
20  that the body camera footage and dash cam footage
21  should have been preserved?
22      MS. ROBERTSON:  Object to form, vague,
23  calls for speculation.
24      **A.  Well, your letter asked that we preserve**
25  **it.  And I entered what -- the report, to see the**

---

49

1  type of report, saw that it was a felony case.  And
2  believed that we were going to be in compliance, by
3  the recording being in the -- in the system as well
4  as the report.  I obviously can see the report.  And
5  I believe there were a couple documents maybe that
6  were attached to it.  And I knew those were saved.
7       And so -- and you know, we get these quite
8  a bit -- not quite a bit, but we do get requests.  A
9  lot of these are criminal cases.  And so I had no
10 reason to believe that it wouldn't be available to
11 you.
12     Q.  (BY MR. GELFAND) Let's back up for a
13 second.  We agree, as you're testifying today, that
14 the body cam and dash cam footage, from the incident
15 that is the subject of this litigation, is no longer
16 available, correct?
17     A.  We have tried our level best.  And the
18 answer to your question is yes.  As far as I can
19 tell, it's not available.
20     Q.  We also agree that because it is in
21 connection with a felony investigation, it should be
22 available, under the Order No. 466, that you issued
23 in March of 2021, correct?
24     MS. ROBERTSON:  Object to form.  You can
25 answer, if you know.

50

1     A.  I want to make sure I answer you
2  correctly.  Could you repeat it?
3     Q.  (BY MR. GELFAND) Sure.  Pursuant to Order
4  No. 466, that you issued in March of 2021, because
5  this is a felony investigation, the video footage
6  from the incident, that is the subject of this civil
7  litigation, should still be available, correct?
8     MS. ROBERTSON:  Same objection.
9     A.  Yes, it should.
10    Q.  (BY MR. GELFAND) And can we also agree
11 that the preservation letter was sent less than 30
12 days after October 22nd of 2022?
13    A.  I would agree with that.  When it was
14 actually received by me, I don't know the date.  In
15 discussion of that, I've come to believe it was
16 after that.  But again, I didn't believe it was
17 going to be a problem, because at that point, I
18 believed it was classified as an auto theft.  I
19 didn't know about the keep the peace category and
20 dispatch.  But I believed that it would have been in
21 the system and available for you.
22    Q.  But to answer my question, I don't think
23 it's particularly controversial.  My question is
24 rather simple, which is November 14th of 2022 was
25 less than 30 days after October 22nd of 2022,

51

1  correct?
2     A.  I beg your pardon.  Yes.  I didn't
3  actually -- I didn't realize -- yes.  That is true.
4     Q.  And so would you also agree with me that
5  under Order No. 466, irrespective of the
6  classification, that as of the date of the
7  preservation letter, this video footage should have
8  been available to the Manchester Police Department,
9  to take whatever steps were necessary, to preserve
10 on November 14th of 2022?
11    A.  Yes.
12    Q.  To be clear, because it's within 30 days,
13 correct?
14    A.  Yes.  Well, the letter was sent within 30
15 days, Counselor, but I think that it is safe -- it
16 is reasonable to say that although a letter is dated
17 at a certain time and I'm not trying to be
18 argumentative here.  But a letter is dated a certain
19 time, that is not indicative of when the time that
20 it is actually seen by us.  In cases like this, it's
21 always best to send it certified mail or even call
22 us.
23     You did date the letter on the 14th, which
24 is within the 30 days, by about a week.  Which is --
25 of course, you wouldn't have known that, but it was

52

1  kind of cutting it a little close.  But -- so you
2  know, the fact that the letter is dated that, my
3  only contention is that it doesn't mean that that's
4  when it was actually received by me or anybody else.
5     Q.  Do you know when Paul Rost received the
6  letter?
7     A.  I do not.
8     Q.  Would you agree with me that sending a
9  letter by email, this day and age, to the city
10 attorney is a reliable method of communicating?
11    MS. ROBERTSON:  Object to form, vague,
12 calls for speculation.
13    Q.  (BY MR. GELFAND) You can answer.
14    A.  I don't think that's the best way.  No, I
15 do not.
16    Q.  Just to be clear, your testimony is that
17 it should have been sent by certified mail, instead
18 of by email to your attorney and to -- and email?
19    A.  Yeah.  I think -- yeah.  I think it best,
20 you know, when you're talking about preservation
21 letter.  And if there was any concern over time,
22 that -- it's always best to contact us directly, so
23 that we ensure that everything is there.  And that
24 there's no possibility of an issue.  You know, a lot
25 of times, we -- even when emails are sent to my

53

1  email address or my wife, it ends up in junk.  And I
2  don't check my junk mail.  So I believe it's always
3  best to send something or -- when I send something,
4  that is important, I always ask for a reply, you
5  know, acknowledge that it's received.
6      Q.   When did you first learn of the existence
7  of the preservation request by us?
8      A.   I -- I'm sorry.  I just don't remember,
9  sir.
10     Q.   Do you remember an approximate date?
11     A.   Beg your pardon?
12     Q.   Do you remember an approximate date?
13     A.   You know, I think -- if I had to guess --
14  well, to answer your question, within a proximity, I
15  would say it would be fairly close to that date.
16  Now, you sent it on the -- if you're saying that you
17  emailed it the same date of the letter --
18     Q.   I am.
19     A.   -- that it was probably within a few days
20  of the -- of the -- of the letter.  I just don't
21  know the exact date.
22     Q.   With the benefit of hindsight, Chief Will,
23  what would you have had to do, to preserve the video
24  footage, so that it's available today?
25         MS. ROBERTSON:  Object to form, vague.

54

1         MR. GELFAND:  I'm just trying to figure
2  out -- maybe there's a better way of asking my
3  question.  I'll strike that -- that question.
4      Q.   (BY MR. GELFAND)  When you received this
5  letter, to make sure that the video footage was
6  actually preserved, what -- what could you have
7  mechanically done, to make that happen?
8         MS. ROBERTSON:  Object to form, calls for
9  speculation.
10     A.   There is a purge button, if you will, that
11  prohibits a case from being purged.  Let's say that
12  you file litigation on a felony case and the
13  litigation, it didn't come to trial, within three
14  years.  To prevent that from being erased, prior to
15  that, there is a button that prohibits it from being
16  purged from the system at all, that's A.
17         B, conversely, we can download it and put
18  it onto a DVD.  But you know, to use your analogy,
19  in this day and age, people are getting away from
20  that.  But that was -- that is another step we could
21  -- we could have taken.
22     Q.   (BY MR. GELFAND)  And is it fair to say
23  that neither of these steps were taken, by you or
24  anyone else at the Manchester Police Department, in
25  connection with this case?

55

1      A.   That is correct.
2      Q.   I asked you about Order No. 466.  Are
3  there any other written policies or procedures
4  governing the preservation or destruction of footage
5  captured by body worn cameras or in-car cameras,
6  meaning dash cams?
7      A.   I don't know.  I -- I did review 466,
8  because I knew you were going to ask me about it.  I
9  would have to go through the rest of the policy
10  manual, to give you an accurate answer.  But off the
11  top of my head, I can't think of any.
12     Q.   Okay.  You understand that you're here and
13  testifying under 30(b)(6) on behalf of the Manchester
14  Police Department or the City of Manchester more
15  precisely, correct?
16     A.   I don't know what a 30(b)(6) is.
17     Q.   That you're basically a quote, unquote
18  corporate representative of the entity, correct?
19     A.   Yes.  I think -- yes.  It was -- yes.  The
20  term was used.  Yes.
21     Q.   One of the subjects that we notified we
22  would ask about, and it's not a trick, I'm just --
23  just asking, was the City's police department's
24  policies regarding body camera footage including but
25  not limited to any policies relating to the

56

1  recording, retention, and destruction of body camera
2  footage.
3         As you sit here today, are there any
4  policies, other than 466, that govern that issue?  I
5  just want to make sure we're covering all of our
6  bases.
7      A.   No.  I -- I understand.  And it's the same
8  answer.  The body worn camera policy was written, of
9  course, when the cameras came in.  So I have no
10  reason to believe that there was anything else,
11  other than we wrote that particular policy, for that
12  particular issue.  So I have no reason to believe,
13  you know, that it is listed anywhere else.  Other
14  than generalized, you know, evidence, that we, you
15  know, would seize on any regular basis.
16     Q.   And just to be clear and put a finer point
17  on that, Chief Will.  Is it fair to say that law
18  enforcement should generally preserve evidence
19  seized in connection with an investigation?
20         MS. ROBERTSON:  Object to form, calls for
21  speculation, vague.
22     A.   Yes.
23     Q.   (BY MR. GELFAND)  Chief I want to switch
24  gears just briefly and get a little granular.  And
25  I'm not sure if you know any of these answers.  But

57

1  just please answer truthfully, if you do and tell me
2  if you don't know.
3       Has there been any technological audit
4  done on what happened, with respect to these
5  particular video recordings, involving the
6  Thompson's house and Harley Davidson?
7       MS. ROBERTSON:  Object to form, vague,
8  calls for speculation.
9       **A.  I requested that.  I asked WatchGuard to**
10 **research that, to see if there was any way to locate**
11 **it, through their end.  I was told there was not.**
12 **And then I asked for an audit, to see if there's**
13 **something that would show when it was purged.  We**
14 **have not received an answer yet.**
15      Q.  (BY MR. GELFAND)  And when you say you've
16 not received that answer yet, is that an ongoing
17 audit, as far as you know?
18      **A.  No, sir.  I don't know if it's even**
19 **possible.  I suspect it is, that it would tell us,**
20 **you know, when -- if a video was accessed, when it**
21 **was purged.  But I don't know that, for sure.  And**
22 **I've got another commander checking with WatchGuard,**
23 **to see if that information is available.**
24      MR. GELFAND:  More of a question for
25 Counsel than for you, Chief Will.  But can we agree

58

1  that any subsequent discovery on this topic be
2  supplemented?  In other words, if that
3  investigation, so to speak, reveals any answers, as
4  to when it was purged, who purged it, et cetera,
5  that that will be provided to us?
6       MS. ROBERTSON:  Well, I think that's
7  probably a larger conversation, Justin, off the
8  record.
9       MR. GELFAND:  Okay.  We can have that
10 larger conversation, off the record.
11      Q.  (BY MR. GELFAND)  Chief Will, who is
12 conducting that particular inquiry?
13      **A.  Lieutenant Ed Skaggs.**
14      Q.  And for the benefit of the court reporter,
15 would you mind spelling the last name?
16      **A.  Sure.  S-K-A-G-G-S.**
17      Q.  And what is Lieutenant Skaggs'
18 technological background, if any?
19      MS. ROBERTSON:  Object to form, calls for
20 speculation.
21      **A.  Yeah.  My only answer is he knows more**
22 **about it than I -- me.  That's about all I can tell**
23 **you.**
24      Q.  (BY MR. GELFAND)  But to ask this in
25 English, has any IT person attempted to find out the

59

1  answer to these questions?
2       **A.  Yes.  Our IT person was involved in it.**
3  **He is the first guy we went to.  And I don't know**
4  **what he said.  Lieutenant Skaggs dealt with him, but**
5  **reported to me that the IT person knew of no way to**
6  **retrieve that, on our end, and suggested that we**
7  **call the vendor, which is what we -- I -- I asked**
8  **him to take that extra step.**
9       Q.  So is it fair to say, sitting here today,
10 you have no idea when these recordings were purged
11 from the system, correct?
12      **A.  I have an idea.**
13      Q.  What -- what's your idea and what's that
14 based on?
15      **A.  It's based on what this call was**
16 **originally classified as is a keep the peace.  And a**
17 **keep the peace would typically be purged after**
18 **likely 30 days, 30 or 60 days, but it's likely based**
19 **on that -- on the call.  It would -- if the officer**
20 **had gone back in and changed the classification,**
21 **then it would have kept it longer.  But that may not**
22 **have been done.  That -- that's my -- my suspicion.**
23      Q.  Was it done?  In other words, you've
24 testified that the officer clearly considered this a
25 felony investigation, as of approximately 4:00 a.m.

60

1  the following morning, meaning October 23rd of 2022.
2  Did the officer change the classification, for
3  purposes of evidence preservation?
4       MS. ROBERTSON:  Object to form, vague,
5  calls for speculation, mischaracterizes the
6  testimony and evidence in this case.
7       **A.  Yeah.  The answer is I don't know.**
8  **Because I -- I don't have any audit information.**
9  **You would have to ask him that.  I don't have any**
10 **information, that I can tell you, for sure, one way**
11 **or the other -- one way or the other, as to what**
12 **he's done, with regarding his -- his reporting.**
13      Q.  (BY MR. GELFAND)  When do you expect
14 Detective Skaggs' inquiry will be completed?
15      **A.  It's Lieutenant Skaggs.  And I don't know.**
16 **When I'm finished here with you, I'm going to be**
17 **walking over to his office.**
18      Q.  So sitting here today, though, based on
19 what you know, as opposed to guessing or
20 speculating, is it fair to say you don't know when
21 this footage was purged from the system?
22      **A.  That's correct.**
23      Q.  And is it fair to say you don't know who,
24 if anyone, purged it from the system?
25      **A.  Well, it's automatic.  I have no reason to**

61

1  believe it was done manually.  That would -- that
2  wouldn't be done.  I suspect it was done as part of
3  the program.
4      Q.  If you know, are files purged from the
5  system, when they hit the 30 or 60 or 360 months
6  mark?  Or are they purged on a particular day kind
7  of en masse?
8      A.  I don't know.
9      Q.  Now, finally, did you have any involvement
10  with this particular investigation, other than with
11  respect to this evidence preservation issue, that
12  you're being deposed about?
13      A.  No.
14      Q.  Is it fair to say that any fact questions
15  about why something happened or why something didn't
16  happen would have to be directed to the officers,
17  who were actually involved?
18      A.  Before I answer that, hold on one second.
19  Well --
20      Q.  Let me ask it a different way, because I
21  know -- I think you're perhaps, and I don't mean
22  this critically, overthinking the question.  Did
23  anyone ever ask you for permission to act in a
24  particular way, before they acted in this case?
25      A.  No.

62

1          MS. ROBERTSON:  Object to form, vague,
2  calls for speculation.
3      Q.  (BY MR. GELFAND)  So in other words, if an
4  officer, in this particular case, did something or
5  didn't do something, is it fair to say that was not
6  based on any specific authority, that you gave them
7  personally?
8      A.  That is correct.
9      Q.  Thank you.  At this point, Chief Will, I
10  don't have any further questions, subject to one
11  thing I want to note for the record.
12          My understanding is that from the
13  testimony is that there continues to be an ongoing
14  inquiry, by the Manchester Police, as to the
15  circumstances and dates, under which the evidence at
16  issue was purged from the system.
17          And to the extent that ongoing inquiry
18  reveals any new information, any different
19  information, or any inconsistent information, or any
20  additional information, we would request that that
21  be immediately disclosed to us, as we consider that
22  relevant to the 30(b)(6) nature of this deposition.
23      A.  I understand that.  In this case, we
24  probably would provide it to our attorneys and have
25  them give it to you.

63

1          And I would just add that we are doing our
2  level best.  I want to understand, a clear
3  understanding, of what happened so that this doesn't
4  happen again.
5          You know, the reason that we have these --
6  these recordings is so that you can have it.  And
7  we -- I want to understand why this -- why it's
8  happened and how it happened.  So we're -- we're
9  doing everything we can, beyond the normal, I think,
10  to -- to research this for you.
11      Q.  I appreciate your time.  Your attorney may
12  have some questions for you.
13          MR. GELFAND:  I don't have any further
14  questions, for you, at this point.
15          MS. ROBERTSON:  Let's take a quick break
16  we've been going for almost an hour and a half here.
17          MR. GELFAND:  Sure.  Shall we say, Sheila,
18  if it's okay with you, maybe ten minutes?  It's
19  11:23 now, 11:35?
20          MS. ROBERTSON:  Yeah.  Ten, fifteen
21  minutes.
22          MR. GELFAND:  Yeah.  That's fine.
23          (WHEREIN, a brief break was taken.)
24          MS. ROBERTSON:  So I don't have any
25  questions.

64

1          MR. GELFAND:  That makes it easy.
2  Chief Will, you have the option to read and review
3  what the court reporter took down or to waive
4  signature and assume that she took it down properly.
5  She just needs to know which you choose.
6          MS. ROBERTSON:  We can -- we can waive,
7  Chief.
8          THE WITNESS:  Waive.
9          (WHEREIN, the deposition was concluded.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

65

1           CERTIFICATE OF REPORTER
2    STATE OF MISSOURI     )
                           )  ss.
3    CITY OF ST. LOUIS     )
4        I, Sheila Field, do hereby certify that
5    pursuant to Notice, there came before me via Zoom
6    remote conferencing,
7              CHIEF SCOTT WILL,
8    who was by me first duly sworn to tell the whole
9    truth of his knowledge touching the matter in
10   controversy aforesaid; that the witness was examined
11   on the day and place in that first aforesaid, and
12   the examination was taken by voice shorthand and
13   later reduced to typewriting; that the signature of
14   the deponent was waived by agreement of counsel, and
15   the deposition is herewith returned.
16       IN WITNESS WHEREOF, I have hereunto set my hand
17   and seal this 9th day of January, 2024.
18
19
20
21              /s/ Sheila Field
22              Sheila Field, CCR
23
24
25

Chief Scott Will  -  December 26, 2023

**A**

**a.m** 37:25 59:25
**ability** 11:4 18:24
**able** 20:4
**above-entitled** 3:22
**academic** 7:5
**academy** 7:8 8:3 8:9
**access** 10:18 11:2
**accessed** 57:20
**accessing** 28:13
**accurate** 10:13 55:10
**accurately** 23:22 31:1
**acknowledge** 53:5
**act** 61:23
**acted** 46:21 61:24
**activate** 18:10
**activated** 18:14
**activities** 13:15
**activity** 9:21
**actual** 31:6
**add** 63:1
**additional** 62:20
**address** 40:22 41:1,2,17,25 42:6,8 44:11,16 53:1
**administration** 42:16
**administratively** 19:2
**advertisements** 41:9
**advise** 15:17
**affidavits** 10:14
**aforesaid** 65:10 65:11
**afraid** 45:25
**afternoon** 3:16
**age** 5:2 52:9 54:19
**agent** 8:18,19

10:8
**ago** 6:3
**agree** 9:20 10:17 10:25 11:16 12:11 19:13,19 21:16 22:1,7 28:11,17 33:8 33:15 34:1 37:24 38:11 40:4 46:14,20 48:19 49:13,20 50:10,13 51:4 52:8 57:25
**AGREED** 4:14
**agreement** 4:20 65:14
**ahead** 18:20
**al** 1:8 3:8
**alleged** 11:18
**altogether** 9:4
**Amara** 12:24 33:19
**ambiguity** 47:10
**amount** 41:9
**analogy** 54:18
**and/or** 39:24
**angles** 19:22
**answer** 6:14 10:22 11:23 18:20 19:11 22:5 23:16 27:5 31:1 33:12,13 35:24 36:7 45:21 49:18,25 50:1,22 52:13 53:14 55:10 56:8 57:1,14,16 58:21 59:1 60:7 61:18
**answers** 56:25 58:3
**anticipation** 47:2
**anybody** 52:4
**anymore** 36:7
**apologize** 34:23
**appear** 20:17

**appears** 21:15 43:13
**apply** 11:5 27:25
**appreciate** 63:11
**appropriate** 10:5 11:14
**approximate** 53:10,12
**approximately** 5:17 8:14 59:25
**April** 9:5
**area** 7:15
**argumentative** 35:5 51:18
**aside** 14:19
**asked** 48:24 55:2 57:9,12 59:7
**asking** 13:21 28:21 54:2 55:23
**asks** 6:8
**aspect** 34:17
**aspects** 6:25
**assigned** 17:14,16
**associates** 14:15
**assume** 6:15 64:4
**assuming** 36:2,4 47:18
**attached** 49:6
**attempted** 58:25
**attention** 12:17 15:10,23 20:12 22:14 24:17 25:17 27:15 39:9
**attorney** 6:8 14:1 14:4,7,20,21 15:2 22:16 39:25 45:10 46:5 52:10,18 63:11
**attorneys** 13:19 13:20,22 45:8 62:24
**audio** 25:20 26:1 26:7,19,23 27:1

27:2,8,9,21 31:5
**audit** 57:3,12,17 60:8
**authority** 17:2 62:6
**authorized** 11:11
**auto** 32:10 37:19 48:12 50:18
**automatic** 24:13 60:25
**automatically** 18:9 24:6,7
**automobile** 32:12 32:15
**available** 11:19 11:25 12:7,12 48:18 49:10,16 49:19,22 50:7 50:21 51:8 53:24 57:23
**Avenue** 4:3

**B**

**B** 2:6 54:17
**back** 8:10 22:15 27:15 31:7 35:19 37:12,23 39:9 43:8 47:17 49:12 59:20
**background** 7:5 58:18
**backwards** 22:12
**based** 14:18 17:9 21:4 23:3,11 26:4 28:3 32:11 35:15,20 41:13 44:8 59:14,15 59:18 60:18 62:6
**bases** 56:6
**basically** 55:17
**basis** 56:15
**bear** 20:13 30:5
**becoming** 8:23
**beg** 7:17 51:2 53:11

**beginning** 17:14
**behalf** 1:14 3:14 5:3 55:13
**belief** 36:25 48:16
**believe** 15:25 18:10,13 20:20 24:3 37:10 44:17,20 45:24 49:5,10 50:15 50:16 53:2 56:10,12 61:1
**believed** 49:2 50:18,20
**believes** 22:17 35:10
**believing** 29:19
**belong** 29:12
**belonged** 32:17
**belongs** 29:19
**benefit** 5:8 40:23 53:22 58:14
**best** 12:22 13:1 43:5 49:17 51:21 52:14,19 52:22 53:3 63:2
**better** 19:16 20:1 27:8 54:2
**beyond** 18:2 63:9
**bicycle** 12:6,10
**bit** 29:3 49:8,8
**blurry** 42:23
**board** 14:25
**body** 16:3,9,14 17:11,14,19,24 18:16,21,22 21:10,12,15 22:19 23:10,13 23:20,22 24:2 24:24 25:21 26:2,5,16 27:3,5 27:7,22 34:11 34:18 35:21 36:20 37:6 40:12,19 47:11 48:2,20 49:14 55:5,24 56:1,8

Chief Scott Will - December 26, 2023

**Bonhomme** 4:3
**bottle** 38:25
**Box** 1:22
**break** 39:2 63:15
   63:23
**brief** 63:23
**briefly** 9:10 56:24
**bring** 15:23
**brings** 13:10
**broadly** 13:9
**brought** 45:19
**buck** 7:2,3
**bureau** 9:11,12
**button** 44:7
   54:10,15

**C**

**C** 4:1 40:11
**call** 12:5 29:20
   30:3 31:6 34:25
   35:2,6,11 43:15
   47:21 51:21
   59:7,15,19
**called** 16:6 29:4
**calls** 10:20 18:19
   22:4 23:15
   27:11 28:7,16
   29:15 30:21
   32:24 33:24
   34:7 37:10
   38:16 48:23
   52:12 54:8
   56:20 57:8
   58:19 60:5 62:2
**cam** 17:19 18:6
   21:10,12,15
   22:19 24:9
   26:25 27:7,9,22
   36:12,20,20
   37:6 47:11,12
   48:2,3,20 49:14
   49:14
**camera** 17:17,22
   17:24,24 19:20
   19:22 20:2
   21:20 23:10,13

23:20,22 24:2
   26:9 27:3,5
   28:19 34:11,18
   35:21 36:5
   40:19,20 48:20
   55:24 56:1,8
**cameras** 16:3,6,6
   16:15,15 17:14
   17:15 18:21,22
   18:22 24:24
   25:21 26:2,10
   40:12 55:5,5
   56:9
**cams** 16:9,9
   17:11 18:16
   26:5,16 27:25
   55:6
**capacities** 18:7
**capacity** 8:4,17
   8:21 26:22
   33:16
**captain** 9:2,7,17
**captioned** 48:11
**capture** 20:5 26:6
   26:12,18,23
   27:9 28:20
**captured** 18:25
   23:21 27:22
   36:14 55:5
**capturing** 19:1
   27:8
**car** 16:5 17:18
   27:4
**case** 12:5 13:6,10
   13:15 21:5
   26:25 28:8
   32:12 33:1
   37:19,21 44:18
   49:1 54:11,12
   54:25 60:6
   61:24 62:4,23
**cases** 14:16 19:3
   49:9 51:20
**categorized** 30:12
   30:17
**category** 30:11

37:17 50:19
**Catherine** 4:9
**cause** 1:7 3:7,19
**CCR** 1:19 4:17
   65:22
**central** 37:25
**certain** 3:19
   37:10 51:17,18
**certainly** 39:2
**CERTIFICATE**
   65:1
**certified** 3:18
   4:17 51:21
   52:17
**certify** 65:4
**cetera** 58:4
**change** 35:16
   37:16 44:21
   60:2
**changed** 35:17
   41:13 59:20
**changes** 37:12
**charge** 6:23 9:10
   9:11 34:16
**chase** 17:6
**Chasing** 20:2
**check** 29:6,7 53:2
**checked** 44:6
**checking** 57:22
**chief** 1:13 3:13
   5:1,11,14 6:18
   6:21 8:23 9:18
   9:19 10:16 17:3
   17:10 18:15,20
   25:1,6 31:20
   32:8 34:3 38:20
   39:1 53:22
   56:17,23 57:25
   58:11 62:9 64:2
   64:7 65:7
**choose** 64:5
**Circuit** 38:6
**circumstances**
   23:17 29:18
   62:15
**citizen** 18:1

**citizens** 41:15
**city** 13:25 14:4,7
   14:20,21 15:1
   16:13 39:25
   42:2 45:8,9
   46:5 52:9 55:14
   65:3
**City's** 55:23
**civil** 5:24 40:6
   50:6
**classes** 7:9
**classification**
   35:16,18 51:6
   59:20 60:2
**classified** 30:4
   50:18 59:16
**Clayton** 6:2
**clear** 27:4 37:1
   38:19 39:13
   47:10 51:12
   52:16 56:16
   63:2
**clearly** 59:24
**click** 44:1,7
**client** 13:6
**clients** 41:15
**close** 52:1 53:15
**Cockrell** 1:8 3:8
   15:16 22:24
   23:1,5,9 25:14
   36:13
**Cockrell's** 33:6
**colon** 43:15
**Colonel** 25:6
**color** 22:9,9
**come** 24:5 32:14
   45:21 50:15
   54:13
**comes** 27:3
**commander**
   34:16 57:22
**committed** 38:12
**common** 19:6
**commonly** 16:6
**communicated**
   12:24 13:2,5

**communicating**
   52:10
**complaint** 39:23
**completed** 60:14
**completely** 33:6
**compliance** 49:2
**concern** 52:21
**concerns** 47:20
**concluded** 64:9
**conclusion** 38:17
**conduct** 11:8
**conducted** 35:20
**conducting** 9:20
   58:12
**conferencing**
   3:17 65:6
**connection** 5:19
   13:14 29:21
   37:3 49:21
   54:25 56:19
**consent** 4:20
**consider** 62:21
**considered** 38:1
   59:24
**consistent** 34:25
   37:20
**constitute** 34:4
**constitutes** 28:14
**contact** 15:17
   18:1,1 47:15,23
   52:22
**contend** 46:16
**contention** 52:3
**context** 5:22
   19:20
**continue** 39:5,7
**continues** 62:13
**control** 36:23
**controversial**
   50:23
**controversy**
   65:10
**conversation**
   58:7,10
**conversely** 54:17
**copy** 30:24 45:24

Chief Scott Will - December 26, 2023

corporate 55:18
correct 5:12,13
  10:12 11:6,8
  16:21 19:9
  20:23,24 22:17
  25:2,3,9,10,13
  25:22,23 26:2,3
  26:23,24 27:23
  27:24 28:1,2
  32:3,6 37:5
  38:6,7,9,10,18
  38:22 39:15,16
  40:14,15,20,21
  43:12 44:3
  45:10,11 47:4,8
  47:13,14,16,21
  49:16,23 50:7
  51:1,13 55:1,15
  55:18 59:11
  60:22 62:8
correctly 40:2
  43:17 50:2
coughing 34:23
counsel 4:15,15
  4:20 47:23
  57:25 65:14
Counselor 38:24
  51:15
couple 6:6 15:23
  36:16 45:20
  49:5
course 8:7 51:25
  56:9
court 1:1 3:1,18
  3:20 4:17 5:8
  38:6 40:23
  58:14 64:3
cover 6:25
covering 56:5
crime 11:13 35:7
criminal 7:6,20
  19:2,3 29:22
  39:22 49:9
criminology 7:7
  7:21
critically 61:22

currently 36:22
custody 36:23
custom 47:19
cut 17:6
cutting 52:1

**D**

D 2:1
dash 16:6,9,15
  17:15 18:5 24:9
  26:25 27:8,25
  36:12,20 40:20
  47:12 48:2,20
  49:14 55:6
date 16:23 21:13
  26:11,17 43:25
  45:16 46:15
  48:5 50:14 51:6
  51:23 53:10,12
  53:15,17,21
dated 51:16,18
  52:2
dates 62:15
Davidson 33:21
  35:23 46:18
  57:6
day 3:17 52:9
  54:19 61:6
  65:11,17
days 15:23 16:1
  37:10,11 40:13
  50:12,25 51:12
  51:15,24 53:19
  59:18,18
dealt 59:4
December 1:15
  3:15 33:19
  42:17
deeper 36:17
Defendant 1:9
  3:9 4:6,16
defendants 11:18
defined 27:20
degree 7:6,12,19
  7:22
demand 47:6

department 5:12
  6:24 7:1 8:24
  9:19 10:18 11:1
  16:13 24:10
  25:11,22 26:6
  26:11,17 32:1,8
  32:21 34:20
  36:24 37:8 38:1
  40:1 41:5 42:3
  42:18 43:6,17
  44:2 46:5,16,22
  47:3,7 51:8
  54:24 55:14
department's
  13:15 23:25
  55:23
depends 29:18
depo 42:11
deponent 65:14
deposed 61:12
deposes 5:3
deposition 1:13
  3:13 4:16 5:15
  5:23 22:19 23:4
  23:9 45:17
  62:22 64:9
  65:15
described 37:13
DESCRIPTION
  2:7
designed 37:9
desk 41:22
destroyed 37:6
destruction 55:4
  56:1
detective 9:12
  10:9 60:14
detectives 10:17
determine 34:11
  36:11 41:11
devices 25:21
different 9:13
  61:20 62:18
difficult 20:5
digital 27:20
  39:18

digitally 27:22
direct 12:16
  15:10 20:11
  22:14 24:17
  25:17 27:15
  39:8
directed 61:16
directly 52:22
disagreement
  46:4
disbelieve 22:20
disclosed 62:21
discover 37:15
discovery 58:1
discuss 47:20
discussed 13:21
Discussing 13:19
discussion 50:15
dispatch 30:10
  31:6 37:14
  50:20
dispatched 35:1
dispatcher 35:10
dispatchers 31:2
  31:4
dispense 6:5
displayed 20:22
disprove 28:9
distribution
  25:11
District 1:1,2 3:1
  3:2,20,21
Division 1:3 3:3
  3:21
docking 24:3
document 16:22
documents 11:10
  21:5 41:21
  47:12 48:7 49:5
doing 63:1,9
door 17:21 29:5,5
dot 39:22,22,22
download 54:17
dozen 5:18
Drive 4:7
driven 36:12

DSN 20:23
duly 65:8
duties 6:22 9:6
duty 12:18
DVD 54:18

**E**

E 2:1,6 4:1,1
Eastern 1:2,3 3:2
  3:3,20,21
easy 64:1
Ed 58:13
effect 16:14
effective 16:23
  25:1 27:17
effort 34:10
either 10:6 24:4
electronically
  47:8
eliminating 44:9
Elmore 12:24
  33:19
else's 28:13,24
email 40:22 41:1
  41:2,16,17,25
  42:8,18 43:6,16
  44:1,11,15 45:7
  52:9,18,18 53:1
emailed 53:17
emails 41:11,11
  52:25
employed 8:24
en 61:7
ends 53:1
enforcement 7:10
  8:4,17,21 9:5,16
  9:21 10:7,19
  11:2 18:6 19:8
  19:14 28:4,5
  34:2 56:18
English 19:6 35:4
  37:1 58:25
ensure 52:23
entered 31:4
  46:17 48:7,25
entering 28:24

entity 55:18
erased 54:14
**Erin** 14:11,14
　15:3 45:7
establish 25:19
**et** 1:8 3:8 58:4
evening 12:19,20
　15:11 22:20
　23:6,10,13,23
　36:13
events 40:11
eventually 45:23
evidence 10:11
　11:11 19:3
　27:20 28:5,8,10
　28:14,25 29:3,6
　29:10,13,21
　34:5 35:15
　39:18 40:1
　56:14,18 60:3,6
　61:11 62:15
exact 45:16 53:21
examination 5:5
　65:12
examined 3:14
　5:2 65:10
example 12:4,10
　20:5 29:16
　35:10
exclusive 42:2
execute 11:5
exhibit 2:7 20:13
　20:15,17 21:9
　22:1 24:18,18
　24:21,23 25:4
　25:18 27:16
　31:9,15,20,22
　37:24 39:9,10
　42:11,25 43:4,8
　43:11,12 44:1
　45:1,4,12,15
　46:9
**Exhibits** 2:8
exist 47:13
existed 40:5
　46:24

existence 53:6
exit 46:1
expect 26:21
　60:13
expectation 9:22
　18:15
expected 36:8
experience 6:4
　14:18 17:10
　19:15 26:4 28:4
　32:7 34:3
expired 38:14
expression 7:2
expressly 4:19
　47:11
expunge 48:9
extent 27:1 40:4
　62:17
extra 48:14 59:8

## F
**F-E-L** 38:8
face 20:19
facilitated 46:18
fact 28:10 34:12
　35:24 38:11
　40:7 52:2 61:14
facts 36:16
fair 6:11,15 9:24
　11:17 14:18
　24:13 27:7 37:2
　40:16,18 54:22
　56:17 59:9
　60:20,23 61:14
　62:5
fairly 11:20 12:2
　12:3 44:21
　53:15
familiar 13:9
　14:11 15:3
　16:17 38:20
　40:22 42:14
　44:4
far 49:18 57:17
**FBI** 7:7 8:3
**February** 6:20

**federal** 8:4,18,19
　8:20
**felony** 38:5,8,12
　38:15 39:22
　49:1,21 50:5
　54:12 59:25
**field** 1:19,22 3:18
　4:17 9:12 65:4
　65:21,22
**fifteen** 63:20
**figure** 12:12 54:1
**file** 54:12
**filed** 5:25 13:17
**files** 27:20 61:4
**fill** 42:7 44:9
**fills** 44:12
**finally** 61:9
**find** 36:1,9 37:3
　58:25
**fine** 63:22
**finer** 56:16
**finished** 60:16
**firm** 13:23 14:12
　46:10
**first** 22:23 44:4
　45:15 53:6 59:3
　65:8,11
**five** 6:20 8:15
**fleet** 9:14
**follow** 10:3,4,6,8
**followed** 6:25
**following** 15:23
　60:1
**footage** 23:20,23
　24:9 26:15
　27:22 28:12
　34:4,12,12,18
　35:21 36:12
　37:6 47:11,12
　48:3,20,20
　49:14 50:5 51:7
　53:24 54:5 55:4
　55:24 56:2
　60:21
**force** 8:6,7,21,22
**forensic** 11:13

**form** 18:19 22:4
　23:14 27:10
　28:6,15,19
　32:23 33:23
　34:6 38:16
　41:13 42:7 44:8
　44:9,11,12
　48:22 49:24
　52:11 53:25
　54:8 56:20 57:7
　58:19 60:4 62:1
**formal** 14:20
**Forty** 9:4
**found** 19:20
　35:25 41:7
**foundation** 22:5
　33:24
**front** 20:15 24:18
　29:5 31:10,16
　39:11 43:9 45:2
**full** 5:8 46:1
**function** 42:2
**functioning**
　21:20 36:5
**further** 62:10
　63:13
**future** 19:1

## G
**gamut** 9:9,16
**gears** 9:18 15:9
　56:24
**Gelfand** 2:3 4:3,5
　5:6 10:25 11:25
　12:16 15:20,22
　19:13 20:11
　22:8 23:19
　27:12 28:11,23
　29:24 31:7 33:2
　33:13 34:1,9
　35:19 38:19
　39:1,5,8 49:12
　50:3,10 52:13
　54:1,4,22 56:23
　57:15,24 58:9
　58:11,24 60:13

62:3 63:13,17
　63:22 64:1
general 16:14
　18:22 25:19
　26:15 27:16,17
　41:2
generalized 41:19
　56:14
generally 9:8
　12:21 17:13,21
　17:23,25 18:5
　23:16,18 26:18
　27:6 28:9 32:25
　35:7,8 41:21
　56:18
**Gerhardt** 15:16
**Gerholdt** 15:19
　15:20,21 20:18
　20:25 21:2,6
　22:18 23:21
　25:15 36:13
**Gerholdt's** 26:9
　34:11,18 35:21
getting 45:17
　54:19
give 31:1 41:16
　55:10 62:25
given 6:4 17:13
　19:14 35:24
　45:23
gives 35:11
giving 29:16
go 6:6 18:19 25:4
　37:16 41:10
　43:24 46:2,2
　47:17 55:9
goes 37:12 44:2
　47:1
going 6:5,9,15
　16:8 20:12
　30:23 35:11
　38:24 42:10
　43:3,5 44:10,25
　45:25 49:2
　50:17 55:8
　60:16 63:16

**good** 5:7 18:2 30:25
**govern** 56:4
**governing** 16:14 55:4
**grab** 38:25
**graduate** 7:7,9 8:9
**granted** 11:5
**granular** 56:24
**green** 21:15,18 22:2,9,11
**ground** 6:6
**guess** 53:13
**guessing** 22:8 60:19
**guidelines** 25:25 35:2
**guy** 59:3

**H**

**H** 2:6
**half** 63:16
**hand** 20:4 65:16
**handgun** 20:3
**handles** 14:16
**happen** 18:12 24:14 48:10 54:7 61:16 63:4
**happened** 20:10 57:4 61:15 63:3 63:8,8
**happening** 19:21 19:22
**happens** 19:7 44:7
**happy** 6:11
**Harley** 33:21 35:23 46:18 57:6
**head** 55:11
**Heights** 9:1,3,7
**hereunto** 65:16
**herewith** 65:15
**hindsight** 53:22
**hired** 21:3

**hit** 44:1 61:5
**hold** 35:3 61:18
**honest** 10:13
**hour** 63:16
**hours** 3:15
**house** 21:6 23:6 29:6 30:2 32:2 32:16 33:3 35:22 57:6

**I**

**idea** 44:5 59:10 59:12,13
**identified** 45:8
**identifies** 46:15
**identify** 46:23
**illegally** 46:17
**immediately** 62:21
**implemented** 27:16 39:14
**important** 28:4 53:4
**improved** 18:24
**in-car** 24:4 55:5
**inaccuracy** 33:9
**inaccurate** 20:8 33:16
**incident** 26:17 32:2,4 34:13,19 35:22 36:21 38:2 39:14 40:5 46:24 48:3 49:14 50:6
**include** 33:2
**included** 25:14 35:13 47:15
**includes** 11:4 40:19 43:14
**including** 6:24 15:12 27:21 36:20 40:8 55:24
**inconsistent** 62:19
**indicate** 21:19,22

**indicates** 21:25 22:11,13 25:5 36:4
**indicative** 51:19
**individuals** 13:23
**info** 47:16
**information** 35:11,15 46:23 47:8 57:23 60:8 60:10 62:18,19 62:19,20
**initials** 41:18
**inquiry** 58:12 60:14 62:14,17
**instances** 15:2 20:7
**interacting** 18:17
**interaction** 18:1
**interactions** 18:25
**interrupt** 30:15
**interviews** 11:8
**investigate** 12:1
**investigated** 11:20 12:1
**investigating** 12:9
**investigation** 49:21 50:5 56:19 58:3 59:25 61:10
**investigative** 31:25
**involved** 11:17 33:1 59:2 61:17
**involvement** 13:13,16,18 61:9
**involving** 5:24 35:22 36:21 38:21 57:5
**irrespective** 51:5
**issue** 17:6 52:24 56:4,12 61:11 62:16
**issued** 25:1 49:22

50:4
**issues** 7:10
**issuing** 17:2
**item** 29:19

**J**

**jammed** 41:8
**January** 65:17
**job** 5:23 27:8
**joint** 8:5
**JOSHUA** 1:8 3:8
**JTTF** 8:11,16
**judgment** 10:10
**judicially** 11:11
**junk** 41:9 44:9 53:1,2
**justice** 7:7,20
**Justin** 4:5 58:7

**K**

**keep** 10:1 28:10 30:10,12,17 35:1,6,8 50:19 59:16,17
**kept** 59:21
**kind** 6:5 52:1 61:6
**knew** 48:12 49:6 55:8 59:5
**knock** 29:5
**know** 12:5 14:5 14:10,23 17:18 18:2 20:25 21:2 22:6,9,10,23 28:18 29:7 36:3 39:3 42:1,3 44:13,14 45:22 45:23 49:7,25 50:14,19 52:2,5 52:20,24 53:5 53:13,21 54:18 55:7,16 56:13 56:14,15,25 57:2,17,18,20 57:21 59:3 60:7 60:15,19,20,23

**L**

**laboratory** 11:13
**laborious** 41:10
**larger** 58:7,10
**law** 7:10 8:4,17 8:20 9:4,16,21 10:7,19 11:2 18:6 19:8,14 28:3,4 34:2 38:14 39:25 46:10 56:17
**lawful** 5:2
**lawsuit** 5:25 15:18,24
**lead** 10:8
**leads** 10:3,4,6
**learn** 32:14 53:6
**learned** 32:18
**left** 43:11
**legal** 38:17 47:23
**legitimate** 41:12
**let's** 8:12 22:15 31:7,7,11 35:19 36:16 37:23 43:8 49:12 54:11 63:15
**letter** 45:5 46:14 46:21 47:1,15 48:5,24 50:11 51:7,14,16,18 51:23 52:2,6,9 52:21 53:17,20 54:5
**level** 7:8 8:6 49:17 63:2
**levels** 7:9
**Lieutenant** 58:13

61:4,8,21 63:5 64:5
**knowing** 23:17
**knowledge** 12:22 12:25 13:1,4,8 33:5 65:9
**known** 51:25
**knows** 58:21

Chief Scott Will  -  December 26, 2023

58:17 59:4
60:15
**light** 21:15,16,18
21:21 22:2,3
**lights** 18:9,13
**limitations** 37:21
38:13 48:13
**limited** 55:25
**Lindenwood** 7:23
7:23
**link** 42:18 43:3,6
**listed** 33:11,14
56:13
**listened** 31:5
**litigation** 13:17
37:3 39:23 40:6
47:2 48:4 49:15
50:7 54:12,13
**little** 12:4 42:23
43:4,19 52:1
56:24
**LLC** 4:3
**local** 8:17
**locate** 57:10
**long** 6:18 8:14
**longer** 37:18 41:3
41:4,6 49:15
59:21
**look** 21:9 36:11
37:24 38:4
40:10 46:9
48:15
**looked** 34:15
36:15 37:2 48:6
**looking** 30:4,6,8
30:9 43:21
**looks** 22:10
**lose** 45:25
**lot** 7:9 12:7 24:5
24:8 49:9 52:24
**Louis** 1:23 4:4,8
7:13 65:3
**lower** 38:4

**M**

**Mackenzie** 13:3

33:20
**mail** 41:9,23
43:15,23 44:10
51:21 52:17
53:2
**mailed** 41:22
**major** 12:5
**making** 6:24
**management**
9:15 25:25
**Manchester** 5:12
8:24 9:19 10:16
11:1 13:14 14:1
14:7 16:2,5,13
17:10,11 23:11
23:24 24:10
30:1 32:1,8
34:19 36:23
37:7 38:1 39:25
41:5,24 42:13
42:14 46:4,16
46:22 47:3 48:2
51:8 54:24
55:13,14 62:14
**manchestermo....**
43:1
**manual** 55:10
**manually** 18:10
18:14 61:1
**March** 16:24
17:3 49:23 50:4
**Margulis** 4:3
**mark** 61:6
**marked** 2:8 20:15
42:10 44:25
**Maryland** 8:25
9:3,7
**masse** 61:7
**masters** 7:6,22,25
**matter** 3:22
26:16 34:15
39:24 40:6 65:9
**matters** 14:22
**mean** 12:4 15:19
27:12 30:15,23
41:15,21 52:3

61:21
**meaning** 34:12
41:5 55:6 60:1
**means** 21:24 35:4
**meant** 37:17
**mechanically**
54:7
**media** 26:1
**meetings** 14:25
**member** 8:5,6,11
8:16 28:12
**members** 18:17
19:8 25:22
**memorialize** 19:7
**memorializes**
19:15
**memory** 19:16
**mentioned** 8:8
**meta-data** 43:15
**method** 52:10
**midnight** 15:13
**mind** 10:1 58:15
**minimize** 46:1
**minimum** 40:12
40:17
**minutes** 63:18,21
**mischaracterizes**
60:5
**misrepresenting**
22:17
**missing** 33:6
**mission** 6:25
**Missouri** 1:2,23
3:2,19,21 4:4,8
7:13 14:8 38:6
38:14 40:13
65:2
**model** 21:12
**moment** 19:1
31:3
**months** 61:5
**morning** 3:16 5:7
18:3 60:1
**motor** 29:11 32:5
35:18 38:2,21
**motorcycle** 29:17

32:13,16 33:21
36:22
**municipalities**
14:24
**myriad** 10:18
11:2

**N**

**N** 2:1 4:1
**name** 5:8 20:20
20:22 33:6
41:18 46:15
47:15,18 58:15
**named** 12:24
**narrative** 19:17
**National** 7:8 8:3
**nature** 19:23
62:22
**necessarily** 24:14
29:20
**necessary** 28:20
51:9
**need** 12:11 19:3
35:14 39:2
41:15
**needed** 46:23
**needs** 64:5
**neither** 54:23
**new** 62:18
**night** 12:17 15:10
15:11 17:18
33:22 36:2,4
**nine** 11:18
**nine-page** 25:9
**Noce** 4:7
**non-evidentiary**
39:19
**normal** 6:6 63:9
**note** 62:11
**notes** 30:24 35:13
**Notice** 65:5
**noticed** 48:7
**notified** 55:21
**November** 44:18
44:22 45:6 46:6
50:24 51:10

**number** 6:3
16:24 20:23
42:21,22,24

**O**

**o'clock** 3:15,16
**Object** 18:18
22:4 23:14
27:10 28:6,15
32:23 33:23
34:6 38:16
48:22 49:24
52:11 53:25
54:8 56:20 57:7
58:19 60:4 62:1
**objection** 10:20
11:22 12:14
18:18 19:10,18
20:9 29:1,14
30:21 33:10
35:5 50:8
**observations**
19:25,25
**obtain** 11:10
**obtains** 35:16
**obviously** 33:14
49:4
**occurring** 34:4
**October** 12:17
13:25 14:6 15:6
15:10,12,13
16:1,2,12 17:12
21:7 23:6 26:6
26:18 27:17,18
30:2 34:13,13
37:25 38:12,12
44:15 50:12,25
60:1
**offend** 6:10,11
**offense** 31:25
**offenses** 38:5
**office** 60:17
**officer** 8:18 10:7
15:16,16 20:4
20:18,25 21:2,6
22:18,22,24

Chief Scott Will - December 26, 2023

23:1,5,9,21
24:14 25:14,15
30:10 33:6
34:11,18 35:12
35:14,21 36:13
36:13 37:12,15
37:16 41:17
48:8 59:19,24
60:2 62:4
**officer's** 19:16,24
30:19 32:20
**officers** 9:14,22
10:17 17:12,13
17:24 18:16
20:7 23:2 31:2
32:25 33:3
41:14 61:16
**official** 18:6
**Oh** 46:2
**okay** 5:19 6:1,4
6:13 8:11,23
10:10 11:4 12:9
12:16,22 14:6
15:15 16:8,12
17:9 20:25 22:8
27:15 30:17
31:8,13,14,15
36:16,18 39:4,5
43:11,23 46:2
47:25 55:12
58:9 63:18
**old** 7:2
**ongoing** 57:16
62:13,17
**open** 10:1 48:6
**open-ended** 12:4
**operated** 26:19
26:20
**operation** 6:23
**operations** 9:12
34:17 42:17
**opposed** 8:18
42:8 60:19
**option** 64:2
**order** 16:14,18,20
16:23 17:7

24:25 25:9,19
25:24 27:16,17
36:17 49:22
50:3 51:5 55:2
**original** 30:3
**originally** 30:3
59:16
**outside** 5:23 8:21
8:22
**overall** 6:23
**overthinking**
61:22

**P**

**P** 4:1,1
**page** 2:2,7 16:10
25:5,5 38:4
**pardon** 7:17 51:2
53:11
**part** 61:2
**particular** 13:15
16:17 17:17
21:5 28:9 32:14
35:2 38:20
56:11,12 57:5
58:12 61:6,10
61:24 62:4
**particularly**
50:23
**parties** 11:17
**Paul** 14:2,3,4,7
14:16,25 15:1
45:7 52:5
**peace** 30:10,12
30:18,20 35:1,6
50:19 59:16,17
**pending** 3:20
**people** 54:19
**period** 35:9 38:8
45:19
**permission** 61:23
**perpetuity** 48:9
**person** 7:24
58:25 59:2,5
**personal** 13:13
41:16

**personally** 10:7
12:18,23 62:7
**personnel** 25:12
39:23
**phone** 31:6 42:21
42:22
**photo** 21:9
**photograph**
20:17 36:1
**photographs**
27:21
**phrase** 38:6
**picture** 36:3
**pieces** 11:10
**place** 13:17 14:25
15:4 17:20
65:11
**plaintiff** 1:6,14
3:6,14 4:2,15
5:3 13:6
**please** 5:7 6:9
39:9 57:1
**PO** 1:22
**point** 6:7 9:13
29:7 39:2 42:4
50:17 56:16
62:9 63:14
**points** 9:13
**police** 5:11,12,20
6:19,21,24 7:1
8:9,24 9:19
10:16 11:1
13:14 16:2,5,13
17:3,10,11
18:16 19:17
20:8 23:2,24
24:10 25:2,6
26:5 30:1,6
31:23,24 32:1,8
32:21,21 33:9
33:15 34:3,19
36:24 37:8 38:1
38:20 41:5,24
42:3,16,18 43:6
43:16,23 44:2
46:4,16,22 47:3

47:6 48:2 51:8
54:24 55:14,23
62:14
**Police's** 23:11
**police@manch...**
40:24 41:20
43:16 44:3,16
45:6
**policies** 23:12
55:3,24,25 56:4
**policy** 24:24
25:19 39:13
40:1,17 55:9
56:8,11
**port** 24:3
**portable** 25:20
**possession** 20:3
36:23
**possibility** 52:24
**possible** 47:2
57:19
**Postal** 41:23
**Powerscourt** 4:7
**precisely** 55:15
**preparation** 23:3
**preservation** 45:5
46:6,11,21
50:11 51:7
52:20 53:7 55:4
60:3 61:11
**preserve** 28:5
47:7 48:2,24
51:9 53:23
56:18
**preserved** 34:5
34:12,19,21,24
39:24 40:8
48:21 54:6
**prevent** 54:14
**previously** 41:6
45:8
**prior** 8:23,25
14:6,9 15:6
16:12 34:9
39:14 45:12
54:14

**private** 28:13,24
29:2,8
**probably** 6:2
53:19 58:7
62:24
**problem** 50:17
**problematic**
41:20
**procedure** 25:19
**procedures** 23:12
55:3
**proceeding** 5:24
**proceedings**
39:22
**process** 41:10,13
**processes** 24:14
**produced** 3:13
5:2
**program** 61:3
**prohibitions** 39:3
**prohibits** 54:11
54:15
**promise** 6:10
**properly** 26:20
46:23 64:4
**property** 28:13
28:20,25 29:2,9
46:17
**prove** 28:9
**provide** 25:25
62:24
**provided** 31:2
58:5
**proximity** 53:14
**public** 18:2,17
19:8 28:12
**pull** 18:11 24:7
**purge** 37:9 54:10
**purged** 37:7
54:11,16 57:13
57:21 58:4,4
59:10,17 60:21
60:24 61:4,6
62:16
**purpose** 25:18
**purposes** 19:5

42:11 60:3
**pursuant** 50:3
65:5
**put** 14:19 19:6
24:2 30:11
37:14 54:17
56:16
**puts** 35:10

**Q**

**question** 6:7,8,14
27:6 28:19,22
33:14 36:6
45:22 48:1
49:18 50:22,23
53:14 54:3,3
57:24 61:22
**questions** 2:2 5:6
47:20 59:1
61:14 62:10
63:12,14,25
**quick** 63:15
**quit** 42:4
**quite** 14:8 29:2
49:7,8
**quote** 55:17

**R**

**R** 4:1 31:11
**ran** 9:9
**range** 27:2
**Raymond** 1:5 3:5
13:7 46:11
**reach** 41:16
**reached** 41:17
**read** 40:2 43:17
45:22 64:2
**readily** 48:19
**realize** 51:3
**really** 6:25 9:9,15
9:15,15 13:16
44:5
**reason** 18:13
20:19 22:20
45:21 46:7
49:10 56:10,12

60:25 63:5
**reasonable** 51:16
**recall** 12:18
**receive** 7:11,14
7:22,25
**received** 46:5
48:5 50:14 52:4
52:5 53:5 54:4
57:14,16
**recognize** 24:21
31:20 42:22,25
**record** 35:21 48:9
58:8,10 62:11
**recorded** 23:22
26:1 27:2 40:11
**recording** 21:25
22:13 25:21
31:5 35:25 36:1
36:7,10 37:17
49:3 56:1
**recordings** 27:21
36:14,15,20,21
37:2 39:21 40:5
46:24 57:5
59:10 63:6
**records** 40:13
45:5 46:12
**red** 18:9,12 21:16
21:21 22:2,9
**reduced** 65:13
**refer** 10:4 14:16
16:8
**reference** 32:9
**referenced** 41:8
**references** 24:25
38:5 47:11
**referring** 13:22
31:25
**refers** 38:8
**reflects** 22:2
**regarding** 32:1
55:24 60:12
**regular** 8:9 42:8
56:15
**Reichardt** 4:7
**related** 7:10

39:21
**relating** 55:25
**release** 39:18
**relevant** 10:11
62:22
**reliable** 52:10
**remember** 53:8
53:10,12
**remote** 3:17 65:6
**repeat** 10:24
28:22 50:2
**rephrase** 6:11
42:5
**reply** 53:4
**report** 19:17
29:22 30:6
31:14,19,23,24
32:1,22 33:9,15
35:9,14 48:6,7,8
48:12,25 49:1,4
49:4
**reported** 59:5
**reporter** 3:18
4:17 5:9 40:24
58:14 64:3 65:1
**reporting** 1:22
60:12
**reports** 10:13
20:8
**represent** 22:16
22:22 23:8
42:12 45:4
**representative**
55:18
**represented** 4:2,6
**represents** 46:10
**request** 46:6 53:7
62:20
**requested** 57:9
**requests** 49:8
**require** 28:18
35:3
**requirements**
40:14
**research** 30:25
35:20 57:10

63:10
**reserve** 9:14
**residence** 23:23
33:21
**resolved** 39:24
**resources** 11:19
11:24,25 12:3,7
12:12
**respect** 57:4
61:11
**responded** 21:6
23:5 30:1 33:3
**responsibilities**
6:22 9:7
**rest** 55:9
**retained** 40:12
48:17
**retention** 39:17
40:1,14,17 56:1
**retrieval** 26:1
**retrieve** 59:6
**retrieving** 29:19
**returned** 65:15
**returns** 24:15
**reveals** 58:3
62:18
**review** 55:7 64:2
**reviewed** 45:18
**reviewing** 21:5
**right** 12:13 16:25
22:10 40:10
43:14 45:18
**road** 20:2
**Robertson** 4:9
10:20,23 11:22
12:14 13:22
15:19 18:18
19:10,18 20:9
22:4 23:14
27:10 28:6,15
29:1,14 30:21
32:23 33:10,23
34:6 35:5 38:16
48:22 49:24
50:8 52:11
53:25 54:8

56:20 57:7 58:6
58:19 60:4 62:1
63:15,20,24
64:6
**role** 9:19
**Rost** 14:2,3,7
15:1 45:7,9,24
46:5 52:5
**Rost's** 14:12
**routed** 30:19
**rules** 6:6
**rush** 10:10

**S**

**S** 2:6 4:1
**S-C-O-T-T** 5:10
**S-E-E-L-E** 14:12
**S-K-A-G-G-S**
58:16
**s/** 65:21
**safe** 51:15
**sat** 14:24
**saved** 48:8,8 49:6
**saw** 45:15 48:11
49:1
**saying** 12:6 26:15
27:13 53:16
**says** 5:3 17:2
25:11,18,24
32:4 40:11
43:15 46:10
**scene** 18:12 29:4
**schedule** 40:14
45:18
**Scott** 1:13 3:13
5:1,10,10 25:6
65:7
**screen** 20:14
30:19 31:9,12
31:15 35:12
39:10 44:8 46:1
**screenshot** 42:13
42:25
**se** 35:8
**seal** 65:17
**search** 11:5

Chief Scott Will - December 26, 2023

sec 20:13
second 15:9
   16:22 29:25
   30:5 35:20
   37:23 49:13
   61:18
secretary 40:13
section 32:21
   39:17
see 8:12 20:2,4,14
   20:19 21:10
   24:18 31:9,11
   31:11,15 36:8
   39:10,19 42:12
   42:19 43:4,5,7,8
   43:21 44:6 45:1
   46:9 48:25 49:4
   57:10,12,23
seeing 43:19
Seele 14:11,14
   15:3 45:7,9
seen 21:23 45:12
   51:20
seize 56:15
seized 56:19
send 51:21 53:3,3
sending 52:8
sends 30:10
sense 14:20 29:23
sent 41:12 44:12
   45:5,25 50:11
   51:14 52:17,25
   53:16
serve 8:3
served 8:20 9:1
   14:7,21 15:3
servers 23:25
   24:11
serves 14:23
Service 41:23
services 1:22 9:11
   9:14
set 65:16
share 20:14
sharing 31:12
Sheila 1:19 3:18

4:17 63:17 65:4
   65:21,22
shift 9:18
shifts 17:15
shorter 35:9
shorthand 65:12
shortly 8:12
show 16:22 19:20
   20:12 30:18
   39:10 42:10
   43:3 44:25
   57:13
showed 33:12
   36:2 43:12
showing 44:5
side 43:11,14
sight 14:5
signature 4:19
   25:7 64:4 65:13
signed 25:5
significant 41:9
similarly 6:14
   24:9
simple 37:1 50:24
sir 7:4 9:4 10:24
   24:19 31:1 53:9
   57:18
siren 18:13
sit 33:18 56:3
sitting 41:22 59:9
   60:18
situation 11:20
   12:2 15:18,24
   17:19
Skaggs 58:13
   59:4 60:15
Skaggs' 58:17
   60:14
slash 25:20 31:25
   39:18
slew 6:5
snail 41:23
software 24:6
somebody 5:25
   20:2 28:24
   29:11,20 46:21

someone's 29:8
sorry 20:21 28:21
   30:14,15 34:22
   53:8
sort 9:9,21 14:20
sound 16:24
speak 21:13
   24:15 58:3
speaking 13:10
   17:13,21,23,25
   18:5 23:16
specific 23:17
   26:14 62:6
specifically 24:25
   25:21 45:22
speculating 60:20
speculation 10:21
   18:19 22:5
   23:15 27:11
   28:7,16,18
   29:15 30:22
   32:24 33:24
   34:7 48:23
   52:12 54:9
   56:21 57:8
   58:20 60:5 62:2
spell 5:8 40:23
   47:1
spelling 58:15
spoken 12:23
   13:2,5
squad 12:5
ss 65:2
St 1:23 4:4,8 7:13
   65:3
started 14:10
state 3:19 5:7
   8:17 38:14
   40:13 65:2
States 1:1 3:1,20
   41:23
station 24:5,15
   42:24
statute 37:20
   38:5,13,21
   48:13

stay 37:18
stealing 32:4
   35:18 38:2,21
   48:11
step 38:25 54:20
   59:8
steps 51:9 54:23
Steven 13:3 33:20
STIPULATED
   4:14
stolen 32:12,15
   32:16
stop 7:3 41:24
stops 7:2 18:3
storage 25:25
stored 27:22 47:8
strike 54:3
subject 15:18,24
   40:6 48:3 49:15
   50:6 62:10
subjects 55:21
subpoenas 11:11
   41:22
Subsection 39:21
   40:10
subsequent 58:1
substituting 45:9
suggested 59:6
Suite 4:4,8
supplemented
   58:2
support 9:11,14
   42:16
supposed 32:20
sure 6:24 10:25
   11:19 12:1 14:4
   20:10 26:12,14
   28:23 36:10
   39:1 42:1 45:16
   50:1,3 54:5
   56:5,25 57:21
   58:16 60:10
   63:17
suspect 57:19
   61:2
suspicion 59:22

switch 56:23
switching 15:9
sworn 3:14 5:2
   65:8
system 24:4,5
   30:11 34:21
   35:8 36:8 37:7
   37:9 48:15,16
   49:3 50:21
   54:16 59:11
   60:21,24 61:5
   62:16

---

## T

T 2:6
tactical 9:10
take 13:16 17:20
   34:10 42:7
   43:18,19 44:8
   48:14 51:9 59:8
   63:15
taken 1:14 4:16
   5:15,23 6:2
   29:21 36:3
   54:21,23 63:23
   65:12
takes 29:11
talking 16:10
   26:8,14 52:20
task 8:6,7,21,22
taught 7:8
team 9:10
technically 14:19
   15:13
technological
   57:3 58:18
technology 18:23
tell 6:9 20:14
   41:15 45:1
   49:19 57:1,19
   58:22 60:10
   65:8
ten 3:15 63:18,20
term 55:20
terms 34:21
terrorism 8:6

Chief Scott Will - December 26, 2023

**testified** 8:2 22:18 23:9,22 59:24
**testifying** 6:4 34:9 40:7 45:13 49:13 55:13
**testimony** 36:19 52:16 60:6 62:13
**Thank** 39:4 62:9
**theft** 12:6,10 32:10 34:4 35:9 37:19 46:18 50:18
**thing** 7:20 24:12 62:11
**things** 13:19 18:3 18:3 19:21,22 47:7
**think** 42:23 44:20 45:24 46:7 50:22 51:15 52:14,19,19 53:13 55:11,19 58:6 61:21 63:9
**Thompson** 1:5 3:5 13:7 23:23 32:17 46:11,15 47:3
**Thompson's** 21:6 23:5 30:1 32:2 32:16 33:20 35:22 36:22 46:17 57:6
**thorough** 9:22
**thoroughly** 11:21 12:2,3
**threatening** 30:20
**three** 37:22 48:17 54:13
**three-year** 48:13
**Tier** 8:6
**time** 14:8,24,24 17:25 18:23 19:21 21:23

35:9 37:11 38:1 45:15,18 51:17 51:19,19 52:21 63:11
**times** 5:17 19:24 29:8 52:25
**titled** 39:17
**today** 16:9 33:19 34:10 36:19 40:8 43:25 45:13 49:13 53:24 56:3 59:9 60:18
**told** 57:11
**tools** 10:19 11:2 28:8
**top** 25:18 46:10 55:11
**topic** 58:1
**touching** 65:9
**tough** 43:4
**traffic** 18:3
**trained** 8:2
**training** 7:10 17:9 26:4 32:7
**transcribed** 4:18
**transferred** 23:24 24:4
**transparency** 19:4
**transpires** 19:16
**trial** 54:13
**trick** 55:22
**tried** 49:17
**trouble** 43:19 45:17
**true** 15:6 46:8 51:3
**truth** 65:9
**truthfully** 57:1
**try** 31:13
**trying** 51:17 54:1
**turn** 20:1
**turned** 18:8
**twelve** 3:16
**two** 24:1 33:3

**type** 18:3 32:4 34:25 49:1
**typewriting** 4:18 65:13
**typically** 59:17

**U**

**Uh-huh** 31:17
**UMSL** 7:14
**undergraduate** 7:11,18,19
**understand** 6:9 12:6 26:13 55:12 56:7 62:23 63:2,7
**understanding** 21:4,24 23:4,11 23:20 24:1 27:4 29:25 32:11 33:18 62:12 63:3
**understood** 6:15
**United** 1:1 3:1,20 41:23
**university** 7:8,13 7:23,24
**unlawfully** 33:20
**unquote** 55:17
**uploaded** 24:10 40:11
**uploads** 24:6
**UPS** 41:23
**use** 11:13,13,19 12:10,12 16:14 17:24 18:9 19:1 25:20,25 41:3,4 44:16 54:18
**uses** 41:6
**usually** 37:20
**utilize** 16:2,5 17:15 18:16
**utilized** 17:11 18:6 21:13 26:5 26:10,16
**utilizing** 22:19 23:10,13

**V**

**v** 1:7 3:7
**vacation** 29:7 45:19,20
**vague** 10:21 18:19 22:5 23:14 27:10 28:6,15 29:14 32:23 33:23 34:6 48:22 52:11 53:25 56:21 57:7 60:4 62:1
**variety** 14:16
**various** 14:21 47:12
**vehicle** 17:16 24:3 29:12 32:5 35:18 38:2,21 48:12
**vehicles** 36:12
**vendor** 59:7
**victims** 11:18
**video** 18:25 19:15 20:5 25:20 26:7 26:15,18 27:21 28:12,23 34:3 39:19 40:11 48:14,15 50:5 51:7 53:23 54:5 57:5,20
**videos** 26:25 40:17,19,20 46:24
**visible** 22:2,3
**visions** 19:22
**visual** 26:1,23
**voice** 65:12

**W**

**W-I-L-L** 5:10
**waive** 64:3,6,8
**waived** 4:19 65:14
**walk** 17:21 29:4
**walking** 60:17

**want** 9:18 12:16 15:9 20:11 24:17 39:8 47:20 50:1 56:5 56:23 62:11 63:2,7
**warrant** 29:9
**warranted** 28:10
**warrants** 11:5
**WatchGuard** 57:9,22
**water** 38:25
**way** 18:25 24:4 37:14 46:3 52:14 54:2 57:10 59:5 60:10,11 61:20 61:24
**ways** 24:1
**we'll** 6:11 29:24
**we're** 16:10 29:4 29:8 56:5 63:8 63:8
**we've** 18:24 41:12 63:16
**website** 41:3,7 42:13,14 43:1
**week** 51:24
**weeks** 45:20
**went** 9:15 59:3
**WHEREOF** 65:16
**wife** 5:24,25 53:1
**witness** 4:19,20 10:22 11:8 38:24 39:4,6 40:7 64:8 65:10 65:16
**witness's** 19:25
**word** 43:18,19
**words** 10:6 15:1 23:21 26:22 44:22 46:20 48:19 58:2 59:23 62:3
**work** 5:20

Chief Scott Will  -  December 26, 2023

**worn** 16:3,15
 24:24 25:21
 26:2 40:12 55:5
 56:8
**wouldn't** 12:5
 29:20 49:10
 51:25 61:2
**write** 35:14
**written** 55:3 56:8
**wrote** 56:11

---
**X**
**X** 2:1,6

---
**Y**
**yards** 11:18
**yeah** 8:5 10:9,23
 10:23 15:21
 18:8 30:23
 31:13 39:6,6
 40:3 42:23
 43:13,23 47:18
 52:19,19 58:21
 60:7 63:20,22
**year** 39:14
**years** 6:3,20 8:15
 9:1,3,4 19:14
 28:3 34:2 37:22
 48:10,17 54:14
**Yep** 6:13,17
 44:24 45:3
 47:18
**Young** 4:7

---
**Z**
**zoom** 3:17 43:5
 43:21 65:5

---
**0**

---
**1**
**11:23** 63:19
**11:35** 63:19
**1226** 1:19
**12444** 4:7
**14th** 44:19,22
 45:6 46:6 50:24

51:10,23
**160** 4:8
**1984** 8:10

---
**2**
**2** 8:6
**2000** 8:1
**2002** 8:13
**2021** 16:24 17:4
 49:23 50:4
**2022** 12:17 13:25
 14:6 15:7,11,12
 15:13 16:1,2,12
 17:12 21:7 23:6
 26:6,18 27:18
 30:2 34:13,14
 37:25 38:13
 44:15,19,23
 45:6 46:6 50:12
 50:24,25 51:10
 60:1
**2023** 1:15 3:15
 33:19 42:17
**2024** 65:17
**22nd** 12:17 14:6
 15:6,11,12 16:1
 16:12 17:12
 21:7 23:6 26:6
 26:18 27:17
 30:2 34:13
 38:12 44:15
 50:12,25
**23rd** 15:13 16:2
 27:18 34:13
 37:25 38:13
 60:1
**252092** 1:22
**25th** 16:24 17:3
**26** 1:15 3:15
**26th** 33:19

---
**3**
**3** 20:13,15,17
 21:9 22:1
**3/25/2021** 25:1
**30** 37:10,11 40:13

50:11,25 51:12
 51:14,24 59:18
 59:18 61:5
**30-day** 40:17
**30(b)(6)** 55:13
**30(b)(6)** 55:16
 62:22
**314-461-2122**
 1:23
**33** 9:1,3
**360** 61:5

---
**4**
**4** 31:9,15,20,22
 37:24
**4:00** 59:25
**4:03** 37:25
**4:23-cv-133-S...**
 1:7 3:7
**40** 19:14 28:3
 34:2
**466** 16:20 25:1
 49:22 50:4 51:5
 55:2,7 56:4
**4th** 42:17

---
**5**
**5** 2:3 45:1,4,12,15
 46:9
**5:00** 12:21

---
**6**
**6** 24:18,18,21,23
 25:18 27:16
 39:9,10
**60** 59:18 61:5
**63105** 4:4
**63125** 1:23
**63131** 4:8

---
**7**
**7** 42:11,25 43:12
 44:1
**750** 4:4
**7700** 4:3

---
**8**

**8** 43:4,8,11 44:1

---
**9**
**9** 25:5
**9/11** 8:12
**9:00** 12:21
**96** 7:15
**97** 7:15
**98** 7:15
**9th** 65:17